UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
ELLAN CORP., INC.,

       Plaintiff,

  - against -

DONGKWANG INTERNATIONAL CO., LTD.,

       Defendant.
------------------------------------------------x
DONGKWANG INTERNATIONAL CO., LTD.,

       Counterclaim Plaintiff,

  - against -

ELLAN CORP., INC. and AMERICAN
FASHION BRANDS, LLC,

       Counterclaim Defendants.
------------------------------------------------x

09 Civ. 00414 (LAP)(MHD)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND ANSWER WITH COUNTERCLAIMS

  Defendant and Counterclaim-Plaintiff, Dongkwang International Co., Ltd. ("Dongkwang") submits this reply memorandum of law in further support of its motion for leave to serve and file an amended answer with counterclaims and to add additional counterclaim-defendants and in response to the opposing memorandum of law served by plaintiff and counterclaim-defendant Ellan Corp., Inc. ("Ellan").

### Preliminary Statement

  At set forth at length below and in our letter brief submitted in support of Dongkwang's motion, this court should grant leave to Dongkwang to file its proposed Amended Answer with Counterclaims containing certain additional affirmative defenses, additional and amended

counterclaims against Ellan and additional counterclaim-defendant American Fashion Brands, LLC ("AFB") and adding additional counterclaim-defendants Golden Bridge Financial Advisory Co., Ltd. ("Golden Bridge") and Shi Hyun Hong ("Hong").[1] Ellan's opposition memorandum appears to object only to the joinder of Golden Bridge and Hong as additional counterclaim-defendants as set forth below. Each of the arguments Ellan makes in this regard are entirely without merit. Contrary to Ellan's conclusory and unsupported position, (i) the circumstances of this case warrant this Court granting leave to file the proposed Amended Answer with Counterclaims under Fed. R. Civ. P. 15(a), (ii) personal jurisdiction exists over Golden Bridge and Hong, and (iii) Golden Bridge and Hong can be joined in this action pursuant to Fed. R. Civ. P. 20(a)(2).

## POINT 1
**The Circumstances of this Case Warrant this Court Granting Leave to File the Proposed Amended Answer with Counterclaims Under Fed. R. Civ. P. 15(a)**

As demonstrated in our letter brief, Dongkwang's motion to file and serve the new pleading should be granted in all respects according to the standard set out in *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). In *Forman*, the Supreme Court declared:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant

---

[1] Annexed to the accompanying declaration of Carlton R. Asher, Jr. dated December 23, 2009 ("Asher Decl.") as Exhibits A-E are the copies of the Distributorship Agreement between Ellan and Dongkwang and certain other documents which are to be included as Exhibits A-E to the counterclaims in the proposed Amended Answer.

the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Forman* at 182.

Contrary to Ellan's position, there has been no undue delay, bad faith, or dilatory motive by Dongkwang in this action. Ellan's argument that allowing Dongkwang to file its proposed Amended Answer with Counterclaims would unfairly prejudice Ellan's rights and would be futile is also without merit.

*A. There has Been No Undue Delay, Bad Faith, or Dilatory Motive by Dongkwang*

Ellan's statement that Dongkwang has been aware of all the facts in its proposed Amended Answer with Counterclaims since August 2008 is untrue. On October 14, 2009, Dongkwang received several new documents from Golden Bridge. In particular, a "Memorandum of Understanding" among Ellan, Golden Bridge, and Hong was obtained, which reflected the nature of their relationship, and the underlying motive to induce Dongkwang into entering into the Distributorship Agreement. A copy of the Memorandum of Understanding between Ellan, Golden Bridge, and Hong is annexed as Exhibit F to the Asher Decl. Based upon our receipt of this and certain other documents from Golden Bridge, our review of documents produced by Ellan and AFB in September and October in 2009 and our related pre-trial investigation, we concluded that Dongkwang had meritorious claims for fraud, negligent misrepresentation, and conspiracy against Golden Bridge and Hong arising from the same transaction that is the subject of Ellan's main claim for breach of contract and Dongkwang's counterclaims against Ellan and AFB for fraud and other wrongdoing.

Even if the Court determines that there was delay by Dongkwang in requesting the Court's leave to amend its Answer and Counterclaims, the delay would be justified. "When,

however, parties have discovered new facts and a basis for new allegations during discovery, delay is routinely justified. *See, e.g. State Teachers Retirement Bd. v. Flour Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). In any event, "mere delay [ ] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* at 851.

There has been absolutely no bad faith or dilatory motive on Dongkwang's part. As set forth in our letter brief, any delay in conducting the depositions of parties' witnesses was the by-product of scheduling conflicts and delays in the production of discovery by all parties. Dongkwang received Ellan's responses to Dongkwang's discovery requests only two weeks ago, and has yet to receive AFB's responses that were due November 19, 2009. Furthermore, due to the fact that Dongkwang's representatives are located half-way around the world in South Korea, there were difficulties obtaining information and scheduling deposition dates. Unsurprisingly, Ellan has not presented any substantial evidence indicative of any bad faith on Dongkwang's part.

B. *Allowing Dongkwang to file its Proposed Amended Answer with Counterclaims Would Not Unfairly Prejudice Ellan or AFB*

In *Reubens v. New York City Dept. of Juvenile Justice*, the court held that "unexplained undue delay is not a sufficient basis to deny a motion to amend a complaint unless there is a showing that defendant would be prejudiced by amendment." 930 F.Supp 887 (S.D.N.Y. 1996). "Unexcused delay will not generally bar amendment if no prejudice will ensue to other parties, and one of most important considerations in determining whether amendment would be prejudicial is degree to which it would delay final disposition of action." *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 112 F.R.D. 417 (S.D.N.Y. 1986). *See also In re "Agent Orange" Product Liability*, 220 F.R.D. 22 (E.D.N.Y. 2004).

4

Here, there was no undue delay by Dongkwang in seeking leave of court to amend its Amended Answer and Counterclaims. Even if there was undue delay by Dongkwang, Ellan's claim that its rights would be unfairly prejudiced is without merit. Indeed, it has provided no substantial argument as to how its rights would be prejudiced in any respect if the Court granted leave for Dongkwang to amend its Answer and Counterclaims. *Cf. Del Rosario v. New York City Dep't of Corrections*, 2009 U.S. LEXIS 66018 (S.D.N.Y., Dolinger, J. May 14, 2009)(amendment to complaint adding new defendant at conclusion of fact discovery permitted). Granting leave for Dongkwang to amend its Answer and Counterclaims would not impose significant costs or inconvenience on Ellan or AFB, and would merely extend discovery and trial by several months. In addition, allowing Golden Bridge and Hong to be joined in the current action would be judicially efficient in that it would bring the parties and claims into one action.

C. *Allowing Dongkwang to file its Proposed Amended Answer with Counterclaims Would Not be Futile*

Ellan's memorandum implicitly misstates the standard used to test for futility in a Rule 15(a) amendment to pleadings. An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *See, e.g. Dougherty v. Town of North Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

This court recently reviewed the current standard for assessing a motion to dismiss under Rule 12(b)(6) in *Healthcare Finance Group, Inc. v. Bank Leumi USA*, WL 3631036 (S.D.N.Y. 2009):

> In assessing a motion to dismiss under *Rule 12(b)(6)*, dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. The task of a court in [*8] ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005)* (internal quotation marks and citation omitted).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Iqbal, 129 S. Ct. at 1950* ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)* (all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal, 129 S. Ct. at 1950*.

*Healthcare Finance Group, Inc. v. Bank Leumi USA*, WL 3631036 (S.D.N.Y. 2009).

In this case, Dongkwang has offered factual allegations sufficient to render the asserted claims against Golden Bridge and Hong plausible on their face.[2] Dongkwang asserts that Golden Bridge and Hong made fraudulent and material misrepresentations to Dongkwang in furtherance of a conspiracy to obtain financial gain from the alleged conspiracy (*See* proposed Amended Answer with Counterclaims, ¶¶ 24-27).

Ellan's arguments that (i) Dongkwang's claims of misrepresentation are irrelevant, (ii) Dongkwang was not entitled to receive any documents from Ellan at the time when it allegedly breached the Distribution Agreement, and (iii) Golden Bridge and Hong were disclosed agents of AFB (and Ellan) have no merit and certainly do not support its argument that Dongkwang's claims against the proposed counterclaim-defendants are futile. Indeed, Ellan completely misconceive the nature of the existing and proposed counterclaims in this action. Dongkwang's claims for fraud, negligent misrepresentation, and conspiracy against Golden Bridge and Hong

---

[2] The elements of the claims against Golden Bridge and Hong for common law fraud, negligent misrepresentation, and conspiracy have been sufficiently plead in Dongkwang's proposed Amended Answer with Counterclaims. In fact, Ellan does not take issue with regard to the sufficiency of Dongkwang's pleading in that regard.

are based upon fraudulent or other improper acts and communications by them which induced Dongkwang to enter into the Distributorship Agreement. In contrast, Ellan's arguments are based upon a construction, however erroneous, of provisions of the Distributorship Agreement, rather than elements of the tort claims asserted against these proposed parties.

The gravamen of Dongkwang's counterclaims is that Ellan, AFB, Golden Bridge, and Hong, in concert and conspiracy with one another, defrauded Dongkwang into purchasing Victoria's Secret ("VS") merchandise based on their false representations that Ellan had the authority to sell and distribute VS merchandise in South Korea and to enter into the Distributorship Agreement with Dongkwang.[3]

When Dongkwang learned that neither Ellan nor AFB had any authority to grant any rights to distribute VS merchandise in South Korea or to enter into the Distributorship Agreement, and Ellan failed and refused to provide Dongkwang with any documents to substantiate its claim of authority to do so, Dongkwang immediately declared the Distributorship Agreement null and void and otherwise rescinded the agreement.

Contrary to Ellan's misconstruction of the counterclaims, the counterclaims are not based upon misrepresentations concerning new vs. overstock merchandise. Rather, the claims are based primarily upon the absence of any authority on the part of Ellan to market or sell VS merchandise in South Korea and to enter into the Distributorship Agreement. What Ellan's memorandum offers is simply the unsworn assertions of its counsel regarding the alleged arrangement and expectation of the parties (e.g., the alleged sequence of events required Dongkwang to make an initial purchase before Limited Brands, a non-party to the Distributorship Agreement, would undertake extensive work required to issue a letter of

---

[3] The Distributorship Agreement itself contains one of the principal misrepresentations made to Dongkwang: "Ellan warrants and represents that it is authorized by Limited to enter into this agreement and to abide by all the conditions and regulations of No Agent Letter" *See* Distributorship Agreement § 12.9 annexed as Exhibit A to Asher Decl.

7

authorization [Plaintiff's Mem. @ 9], a matter nowhere mentioned in the Distributorship Agreement). Thus, Ellan's argument serves merely as a precursor to the position it will presumably take at trial.

Moreover, there is no merit to Ellan's argument that the parol evidence rule bars Dongkwang's claims. Under New York law, contracts such as the Distributorship Agreement do not prevent judicial inquiry and receipt of parol evidence concerning specific allegations of fraud. *Danann Realty Court v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959); *Most v. Monti*, 91 A.D. 2d 606, 456 N.Y.S.2d 427 (2d Dep't 1982); *Wohl v. Owne*, 580 N.Y.S.2d 854 (N.Y. City Civ. Ct. 1992). In all events, Golden Bridge and Hong were not parties to the Distributorship Agreement; thus the parol evidence rule would not apply to Dongkwang's claim against them.

In arguing that Golden Bridge and Hong were only the disclosed agents of AFB, Ellan conveniently omits the fact that they are also alleged as disclosed agents of Ellan (*see* proposed Amended Answer with Counterclaims ¶ 12). Ellan also omits the context in which the holding of *Mencher v. Weiss*, 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953) should be applied to suggest that Golden Bridge and Hong would not be liable to Dongkwang. The holding in *Mencher* applies to the liability of an agent in the context of being bound to a contract between its principal and a third party.

In *Mathis v. Yondata Corp.*, the court held that an agent may be held personally liable for negligent misrepresentation to one who, in reliance upon such representations and to his detriment, enters into a contractual relationship with the agent's principal, since, as a matter of sound policy, there is no good reason why an agent should be permitted to use the agency relationship as a shield against liability to a third party for a wrongful act the agent has

deliberately committed, regardless of whether he was acting at the time within the scope of his employment. 125 Misc.2d 383, 480 N.Y.S.2d 173 (N.Y.Sup. 1984).

In this case, Dongkwang is not alleging that Golden Bridge and Hong are liable pursuant to the provisions of the Distributorship Agreement between Ellan and Dongkwang. Rather, Dongkwang is alleging that Golden Bridge and Hong are liable to Dongkwang for fraud, negligent misrepresentation, and conspiracy in pursuit of their own financial gain.

## **POINT II**
**Personal Jurisdiction Exists Over Golden Bridge and Hong**

Dongkwang's counterclaims against Golden Bridge and Hong clearly demonstrate the Court's personal jurisdiction over Golden Bridge and Hong. While Golden Bridge and Hong are domiciliaries of the Republic of Korea, their actions as alleged took place, in relevant part, within the State of New York on or around August 7 and 8, thus permitting this Court to exercise long-arm personal jurisdiction over them pursuant to both CPLR § 302(a)(1) and CPLR § 302(a)(2). *See* proposed Amended Answer with Counterclaims, ¶¶ 2, 14-16, 25, 27.

*A.     Jurisdiction Pursuant to CPLR § 302(a)(1)*

The leading New York case concerning long-arm jurisdiction over a non-domiciliary under CPLR § 302(a)(1), as Ellan itself points out, is *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 851 N.Y.S.2d 381 (2007), which held that a court may exercise personal jurisdiction over any non-domiciliary who transacts any business within the state. The court stated that the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York. *Id.* at 508. No one particular act will necessarily determine the existence of a transaction within the scope of the statute; the defendant's New York activities, and their nature and quality, are to be considered

in their totality. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8 (1965).

*George Reiner and Co. v. Schwartz*, is the "clearest sort of case" in which the transaction category has been held applicable. 41 N.Y.2d 648, 653, 394 N.Y.S.2d 844 (1977). The defendant in that case was a Massachusetts domiciliary who came to New York for one day for the purpose of seeking a position as plaintiff's sales representative in New England. At the end of the one day of interviewing and negotiating with plaintiff in New York, the defendant signed a long-term contract. He returned to Massachusetts and undertook performance of the contract over the next few years, never again entering New York. Plaintiff sued in New York for breach of the contract, alleging that defendant had retained excessive commissions. The court held that defendant's one-day visit to New York was of such nature and quality as to qualify as a transaction of business within the meaning of the statute. Due process was satisfied because the defendant "purposefully availed himself of the privilege of conducting activities in [New York], thus invoking the benefits and protections of our laws." *Id.*

Here, proposed counterclaim defendants Golden Bridge and Hong unequivocally availed themselves to the privilege of conducting activities within the State of New York, and invoked the benefits and protections of New York. They flew to New York City from South Korea, stayed at New York hotels, and participated in the negotiation and execution of the Distributorship Agreement on August 7 and 8 of 2008 at the Manhattan office of AFB. *See* proposed Amended Answer with Counterclaims ¶¶ 14, 15. True and correct copy of travel vouchers, invoices, and receipts reflecting their activity concerning their presence and participation with the New York transaction is annexed as Exhibits G - J to *Asher Decl.*

### B. *Jurisdiction Pursuant to CPLR § 302(a)(2)*

CPLR § 302(a)(2) confers long-arm jurisdiction for a cause of action arising from a tortious act committed by a defendant within the state. It applies to any type of tortious act committed in New York – negligence, assault, fraud, conversion, violation of right of privacy, breach of fiduciary duty, tortious interference with contractual relations, etc.

Here, the fraudulent and negligent misrepresentations made by Golden Bridge and Hong occurred in New York City during the negotiations of the Distributorship Agreement on August 7 and 8 of 2008. *See* proposed Amended Answer with Counterclaims ¶ 15. They made fraudulent and negligent misrepresentations about Ellan's authority to distribute new and surplus VS merchandise within North America, Ellan's authority to enter into the Distributorship Agreement, and Ellan's ability to obtain a license for Dongkwang to sell new VS merchandise in South Korea. These tortuous acts by Golden Bridge and Hong induced Dongkwang to enter into the Distributorship Agreement with Ellan. Therefore, the acts of Golden Bridge and Hong allow this Court to exercise personal jurisdiction over them.

### POINT III
**Golden Bridge and Hong Can be Joined in this Action Pursuant to Fed. R. Civ. P. 20(a)(2)**

To join additional parties pursuant to Fed.R.Civ.P. 20, which governs permissive joinder of defendants, persons may be joined in one action as defendants if (i) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and (ii) any question of law or fact common to all defendants will arise in the action. Fed.R.Civ.P. 20(a)(2).

The "same transaction" requirement of permissive joinder rule means that there must be some allegation that the joined defendants acted jointly. *Arista Records LLC v. Does 1-4*, 589 F.Supp.2d 151 (D. Conn. 2008). Joinder does not depend, however, on the existence of claims

arising from the same incident or occurrence; rather, the term "transaction" is a word of flexible meaning that may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. *Barnhart v. Town of Parma*, 252 F.R.D. 156 (W.D.N.Y. 2008). In *Shaw v. Munford*, the second prong of Fed. R. Civ. P. 20(a)(2) requiring a "question of law or fact common to all defendants" was satisfied when the plaintiff sought damages from the additional defendants sought to be joined because of their alleged participation in the same transaction. 526 F.Supp. 1209 (D.C.N.Y. 1981).

In this case, both prongs of permissive joinder are clearly satisfied. In its proposed Amended Answer and Counterclaims, Dongkwang asserts joint and several liability against Golden Bridge and Hong for an alleged conspiracy with Ellan and AFB to defraud Dongkwang. (*See* proposed Amended Answer with Counterclaims, ¶¶ 54-57). In furtherance of that conspiracy, Golden Bridge and Hong consistently made fraudulent and negligent misrepresentations to Dongkwang. (*See* proposed Amended Answer with Counterclaims, ¶¶ 24-27). Here, the questions of law and fact common to Ellan, AFB, Golden Bridge, and Hong are whether they did in fact participate in the aforementioned conspiracy and whether, in all events, their fraudulent and otherwise negligent misrepresentations induced Dongkwang to enter into the Distributorship Agreement with Ellan, which is the common subject matter of all of the pending and proposed claims of all of the parties in this action.

## **CONCLUSION**

For the foregoing reasons and those set forth in our letter brief dated December 10, 2009, it is respectfully requested that Dongkwang's motion for leave to serve and file an Amended

Answer with Counterclaims and for leave to add additional counterclaim-defendants Golden Bridge and Hong be granted in all respects.

Dated: New York, New York
December 23, 2009

          KIM & BAE, P.C.

          By /s/ Carlton R. Asher
          Carlton R. Asher, Jr. (CA-8530)
          Bong June Kim (BK-6989)
          110 East 59th Street, 29th Floor
          New York, New York 10022
          Phone: (212) 319-6888
          Fax: (212) 319-7539
          *Attorneys for Defendant and Counterclaim Plaintiff,*
          *Dongkwang International Co., Ltd.*

## CERTIFICATION OF SERVICE

I hereby certify that on December 24, 2009 at 12:25 a.m., I electronically filed the foregoing Reply Memorandum of Law with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following: Melanie Weiner, Esq., melanie@coberthaber.com, *attorney for additional counterclaim defendant American Fashion Brands, LLC* and Alexander Geiger, Esq., ageiger@AlexanderGeiger.com, *attorney for plaintiff counterclaim-defendant Ellan Corp., Inc.*

Dated: December 24, 2009

                                                Carlton R. Asher, Jr. (CA-8530)