UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
ELLAN CORP., INC.,                    :

          Plaintiff,                  :

          -against-                   :          <u>MEMORANDUM & ORDER</u>

DONGKWANG INTERNATIONAL CO. LTD.,:     09 Civ. 414 (LAP)(MHD)

          Defendant.                  :
--------------------------------x
DONGKWANG INTERNATIONAL CO. LTD.,
                                      :
          Counterclaim
          -Plaintiff,
                                      :
          -against-
                                      :
ELLAN CORP., INC. and AMERICAN
FASHION BRANDS, LLC,                  :

          Counterclaim                :
          -Defendants.
--------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


     Plaintiff Ellan Corp., Inc. commenced this lawsuit against

Dongkwang International Co., Ltd., asserting a claim for breach of

a written Distributorship Agreement, through which Dongkwang would

be the exclusive distributor in South Korea of certain Victoria's

Secret ("VS") products purchased by Ellan from The Limited Group.

Almost immediately after signing the agreement, Dongkwang sought to

rescind, claiming that Ellan did not have authority to sell the

Victoria's Secret products in question for resale in Korea. That

1

step triggered Ellan's filing of this suit.

Dongkwang has answered the complaint, invoking numerous affirmative defenses, and has also asserted counterclaims and third-party claims against Ellan and a third-party defendant -- American Fashion Brands, LLC. ("AFB"). Dongkwang claims in substance that Ellan and AFB misled it into entering into the distribution agreement and thereby perpetrated a fraud under New York common-law, based on the alleged facts that Ellan "did not have any authority to distribute VS merchandise outside of its own stores" (Def.'s Answer & Counterclaims, p.6 ¶ 15), and that "[n]either AFB nor Ellan had any authority to grant any rights to distribute VS's merchandise." (Id. p.7 ¶ 17). Dongkwang asserts that AFB and Ellan "conspired to induce [Dongkwang] to enter into the Agreement with Ellan after [Dongkwang's] negotiations with AFB fell through." (Id. p.7 ¶ 19).

Dongkwang now seeks leave to amend its answer with counterclaims. The amendment would (1) allege additional factual details, (2) assert additional affirmative defenses, (3) assert new counterclaims for contribution and indemnification and for a declaratory judgment, and (4) join two new Korea-based third-party defendants who allegedly acted as agents for Ellan -- Golden Bridge

2

Financial Advisory Co., Ltd. and its principal, Shi Hyun Hong.

<u>BACKGROUND</u>

According to Dongkwang, in 2008 it sought to introduce a line of Victoria's Secret clothing in its retail outlets in South Korea. (Def.'s Proposed Am. Answer & Counterclaims, p.6 ¶ 9). For that purpose, it started discussions with Golden Bridge, as AFB's agent, primarily through Mr. Hong, "for the purpose of obtaining VS distribution rights in South Korea". (<u>Id.</u>). Dongkwang says that it subsequently learned that AFB "had rights only to VS's surplus merchandise, <u>i.e.</u>, old inventory, or irregular inventory, and that AFB's rights to sell such merchandise were limited to AFB's own stores." (<u>Id.</u> p.7 ¶ 11).

Dongkwang asserts that Golden Bridge and Hong then introduced Dongkwang to Ellan while acting as Ellan's authorized agents. (<u>Id.</u> p.7 ¶ 12). It alleges that Golden Bridge and Hong represented that "Ellan had the license to distribute and sell VS merchandise in South Korea" (<u>id.</u>), and that Dongkwang "would also be able to market new merchandise in South Korea as well". (<u>Id.</u>)

It is not disputed that on August 8, 2008, in New York City,

3

Ellan and Dongkwang entered into a distribution agreement after negotiations. (Compl. ¶ 6; Def.'s Answer & Counterclaims, p.6 ¶ 11). Defendant contends that Golden Bridge, Hong, and AFB all participated in those negotiations. (Def.'s Proposed Am. Answer & Counterclaims, p.8 ¶ 15). According to Dongkwang, at this meeting, Ellan and AFB reinforced the prior representations made by Golden Bridge and Hong, representing that "Ellan had the ability to obtain a license for Dongkwang to sell new merchandise in South Korea." (Id. p.9 ¶ 15).

Under the agreement, Ellan appointed Dongkwang "as its exclusive distributor of the VS products [that Ellan] has purchased for the Country of South Korea". (Distributorship Agreement, Aug. 8, 2008, Ex. A to Answer & Counterclaims/Ex. A to Asher Decl. ["Distr. Agreement"], at art. 2). In doing so, Ellan represented that "Ellan has the rights to distribute certain [VS products] it has purchased [. . .] from The Limited Group" and that the VS products that Ellan was agreeing to offer to Dongkwang "are generally current VS overstock merchandise." (Distr. Agreement).

The next day, August 9, 2008, Dongkwang "advised [Ellan] that it would not comply with its obligations pursuant to the Agreement." (Compl. ¶ 8). Dongkwang reports that it had "learned

that neither Ellan nor AFB had any authority to grant any rights to distribute VS merchandise in South Korea or to enter into the Distributorship Agreement", and that following that discovery, "Dongkwang immediately declared the Distributorship Agreement null and void and otherwise rescinded the agreement." (Def.'s Reply Mem. Law Supp. Mot. to Amend, Dec. 24, 2009 ["Def.'s Reply Mem."] at 7).

I. Procedural History

On January 15, 2009, shortly after Dongkwang stated its intention to rescind the Distributorship Agreement, Ellan commenced this lawsuit, asserting a breach-of-contract claim against Dongkwang for its repudiation of the agreement. (See Compl. ¶¶ 6-14). On April 28, 2009, Dongkwang filed its answer, denying that it had breached its contractual obligations and invoking various affirmative defenses,[1] and asserting counterclaims against Ellan. (See Def.'s Answer & Counterclaims). It also joined AFB as a third-party defendant. (See id.).

---

[1] Dongkwang asserted nine affirmative defenses: failure to state a claim, laches/waiver/estoppel/acquiescence, absence of damages, failure to mitigate damages, unclean hands, lack of personal jurisdiction, unenforceability of the Distributorship Agreement, lack of standing, and assumption of the risk. (See Def.'s Answer & Counterclaims). It also purported to reserve the right to assert additional affirmative defenses after discovery and clarification of the complaint. (See id. p.4 ¶ 24).

Dongkwang's counterclaims are premised on the contention that Ellan and AFB had falsely represented that Ellan had "the license to distribute and sell VS products in South Korea", when "[n]either AFB nor Ellan had any authority to grant any rights to distribute VS's merchandise." (Id. p.6. ¶ 10, p.7 ¶ 17). According to Dongkwang, in reliance on these representations, it had signed the agreement, "beg[u]n extensively marketing this new business through advertisements, media, and its existing clients and business contacts", and "expended significant amounts of money and time to visit the United States to plan and launch its new venture." (Id. p.6 ¶ 12). Dongkwang goes on to allege that, upon review of two documents that Ellan provided to Dongkwang after the signing of the Agreement -- a "No-Agent Letter" signed by representatives for Victoria's Secret, Ellan, AFB, and a company called DS Marvel Worldwide,[2] and an "Inventory Purchase Agreement" between Ellan and AFB[3] -- "it became abundantly clear that Ellan did not have any authority to distribute VS merchandise outside of its own stores." (Id. p.6 ¶ 15).

---

[2] See No-Agent Letter, July 3, 2007, Ex. B to Answer & Counterclaims/Ex. D to Asher Decl. ["No-Agent Letter"].

[3] See Inventory Purchase Agreement, Apr. 25, 2008, Ex. C to Answer & Counterclaims/Ex. E to Asher Decl. ["Inventory Purchase Agreement"].

Based on these allegations, Dongkwang asserted counterclaims against Ellan for breach of contract, common-law fraud, negligent misrepresentation, and violation of an implied covenant of good faith and fair dealing, and against Ellan and AFB for civil conspiracy, based on their alleged scheme to inveigle Dongkwang into signing the Distributorship Agreement. (See Def.'s Answer & Counterclaims).

On May 6, 2009, Ellan filed its answer to Dongkwang's counterclaims, denying in general most of the allegations made by Dongkwang, but admitting that discussions and negotiations had occurred between Ellan and Dongkwang (Pl.'s Answer to Counterclaims ¶ 9) and that Ellan had provided certain documents to Dongkwang. (Id. ¶ 14). AFB answered Dongkwang's claims on July 15, 2009, generally denying the allegations and asserting two affirmative defenses. (See Third-Party Def.'s Answer).

Discovery commenced, but thus far has been limited to initial disclosures, document production, and answers to interrogatories. (Alexander Geiger, Esq. Letter to the Court, Mar. 8, 2010, at 1). None of the numerous noticed depositions have yet been taken (see id.), despite a previously-established fact-discovery deadline of

December 31, 2009. (See Order, July 17, 2009).


    II. Dongkwang's Motion to Amend


    By letter to the court dated December 11, 2009, Dongkwang
moved for leave to amend its answer and counterclaims in various
ways, including to assert additional claims against two new third-
party defendants, Golden Bridge and Hong. (See Carlton R. Asher,
Jr., Esq. Letter to the Court, Dec. 10, 2009, Docket Doc. #31
["Def.'s Mot. to Amend"]). The proposed amended pleading adds some
factual allegations in support of Dongkwang's counterclaims against
Ellan and AFB, as well as some new affirmative defenses,[4] all of
which are predicated on the previously articulated contention that
Ellan lacked authority from VS to enter into the distribution
agreement and that both it and AFB misrepresented the nature of
Ellan's authority. (See Def.'s Proposed Am. Answer &

---

[4] The proposed amended answers drops the affirmative defense
of unclean hands, but asserts the additional affirmative defenses
of Ellan's failure of performance pursuant to the Distributorship
Agreement, anticipatory repudiation of the Agreement, substantial
breach of material obligations under the Agreement, that
Dongkwang was induced into entering into Agreement based on
Ellan's false and misleading representations of material facts,
and that Ellan's recovery is barred by Dongkwang's rights of
setoff and recoupment arising from its counterclaims. (Def.'s
Proposed Am. Answer & Counterclaims p.3 ¶¶ 18-21).

Counterclaims). The proposed new pleading asserts the claims for fraud and negligent misrepresentation that were previously asserted against Ellan only against AFB as well, and adds Golden Bridge and Hong as third-party defendants on the civil conspiracy claim against Ellan and AFB. (See id.). It also newly asserts a request for contribution and indemnification against the new parties and AFB (id. p.16 ¶¶ 58-60) and requests entry of a declaratory judgment that the Distributorship Agreement is "null and void" and that Ellan misrepresented its authority to enter into the Agreement or in the alternative that Ellan's anticipatory repudiation relieved Dongkwang from its obligations under the Agreement. (Id. p.12 ¶¶ 28-31).

Ellan (though not AFB) opposes the proposed amendments. (See Pl.'s Mem. Law Opp. Def.'s Mot. to Amend, Dec. 17, 2009 ["Pl.'s Mem. Opp."]). It argues principally that the addition of Golden Bridge and Hong would be futile because this court cannot assert jurisdiction over them (id. 4-6), that some of the new factual allegations and claims premised on them would be futile because they are either "irrelevant" or not factually correct (id. 7-9), that neither of the proposed new parties can be held liable because they were agents of a disclosed principal (id. 9-10), and that the

9

amendment is sought purely for purposes of delay and would be prejudicial to plaintiff. (Id. 10-11).

For the reasons that follow, we grant in part Dongkwang's motion to amend and deny it in part.

ANALYSIS

A. Legal Standard Governing Motion to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure specifies that federal courts should "freely give" leave to amend "when justice so requires." As explained by the Supreme Court, such leave is to be liberally granted:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, "be freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting Foman, 371 U.S. at 182); accord, e.g., Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) (internal citations omitted). Nonetheless, amendment may properly be denied in appropriate circumstances, such as when the proposed amendment would be futile or would unduly prejudice another party. E.g., Foman, 371 U.S. at 182; McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (internal citations omitted).

Ellan invokes futility -- including lack of personal jurisdiction, failure to state a claim upon which relief may be granted -- and undue delay as grounds for denying Dongkwang's application. We address these arguments in turn.

B.    Futility

Futility generally turns on whether the proposed amended pleading states a viable claim. Thus, if the proposed new pleading could survive a Rule 12 dismissal motion, it will generally not be deemed futile. Penn Group, LLC. v. Slater, 2007 WL 2020099, at *4

(S.D.N.Y. June 13, 2007) (citing <u>Lucente v. IBM Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002); <u>Ricciuti v. N.Y. City Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991)).

<u>          </u>1.  <u>Alleged Lack of Personal Jurisdiction</u>

Ellan first argues that the court lacks personal jurisdiction over the two newly added third-party defendants, because both parties "are domiciliaries of the Republic of Korea, and [. . .], with the exception of a single meeting in New York City, whatever they may have done or said in connection with the Agreement, they did or said either in [South] Korea or in China." (Pl.'s Mem. Opp. at 4 (internal citation omitted)). This argument is meritless.

<u>      </u>The party asserting a claim bears the burden to establish that the court has jurisdiction over the defendant. <u>See</u>, <u>e.g.</u> <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 206 (2d Cir. 2003) (citing <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996)); <u>Kernan v. Kurz-Hastings, Inc.</u>, 175 F.3d 236, 240 (2d Cir. 1999) (quoting <u>Metro. Life Ins. Co.</u>, 84 F.3d at 566). In the face of a motion to dismiss on jurisdictional grounds -- of which Ellan's opposition is, in this respect, the functional

equivalent -- the court has discretion either to rely on facts in the pleadings and proffered affidavits or to conduct an evidentiary hearing to determine the relevant jurisdictional facts. <u>See</u>, <u>e.g.</u>, <u>CutCo Indus., Inc. v. Naughton</u>, 806 F.2d 361, 364 (2d Cir. 1986). If the court chooses to rely on the pleadings and affidavits in lieu of a hearing, plaintiff need make only a <u>prima facie</u> showing of jurisdiction. <u>Grand River Enters. Six Nations, Ltd. v. Pryor</u>, 425 F.3d 158, 165 (2d Cir. 2005); <u>CutCo Indus., Inc.</u>, 806 F.2d at 364 (internal quotations omitted); <u>see also</u>, <u>e.g.</u>, <u>Best Van Lines, Inc. v. Walker</u>, 490 F.3d 239, 242 (2d Cir. 2007) (quoting <u>Thomas v. Ashcroft</u>, 470 F.3d 491, 495 (2d Cir. 2006)); <u>Ball v. Metallurgie Hoboken-Overpelt, S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990) (before discovery, plaintiff need only make <u>prima facie</u> showing of personal jurisdiction, which may be established by good-faith allegations in the pleadings). In assessing such a motion, the court must "construe the pleadings and affidavits in plaintiff's favor at this early state." <u>PDK Labs, Inc. v. Friedlander</u>, 103 F.3d 1105, 1108 (2d Cir. 1997) (citing <u>CutCo Indus., Inc.</u>, 806 F.2d at 365); <u>see also</u> <u>DiStefano v. Carozzi Am., Inc.</u>, 286 F.3d 81, 84 (2d Cir. 2001) (internal citation omitted); <u>A.I. Trade Fin., Inc. v. Petra Bank</u>, 989 F.2d 76, 79-80 (2d Cir. 1993). Nonetheless,"conclusory non-fact-specific jurisdictional allegations" or a "legal conclusion

couched as a factual allegation" will not establish a <u>prima</u> <u>facie</u> showing of jurisdiction. <u>Jazini v. Nissan Motor Co., Ltd.</u>, 148 F.3d 181, 185 (2d Cir. 1998).

In diversity cases, the court must look to the law of the forum state to determine whether it has <u>in</u> <u>personam</u> jurisdiction. <u>See</u>, <u>e.g.</u>, <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 104 (2d Cir. 2006); <u>Kronisch v. United States</u>, 150 F.3d 112, 130 (2d Cir. 1998) (internal citation omitted); <u>Bensusan Rest. Corp. v. King</u>, 126 F.3d 25, 27 (2d Cir. 1997) (internal citation omitted). If the court may exercise jurisdiction under state law, it must then decide whether such exercise "comports with the requirements of due process." <u>D.H. Blair & Co.</u>, 462 F.3d at 104 (citing <u>Metro. Life Ins.</u>, 84 F.3d at 567); <u>see</u> <u>also</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) ("due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'") (internal citations omitted).

Dongkwang invokes CPLR section 302, which sets forth the bases

for a court to exercise specific personal jurisdiction -- that is, jurisdiction based on the acts that gave rise to the claims asserted -- over a non-domiciliary defendant. It provides in pertinent part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary[. . .] who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act[. . .[5]].

---

[5] The balance of section 302(a) authorizes the court to assert jurisdiction over an out-of-state defendant who:

> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

15

N.Y. C.P.L.R. § 302(a)(1) & (2).

Although the parties dispute whether section 302(a)(1) provides a basis for jurisdiction on the theory that the new defendants transacted business in New York, we need not address that question. It is clear that section 302(a)(2) -- which Ellan does not even mention -- provides a jurisdictional basis for the claims against Golden Bridge and Hong.

According to the proposed new pleading, Golden Bridge is a Korean corporation with its principal place of business in Seoul. (Def.'s Proposed Am. Answer & Counterclaims at p.6 ¶ 7). Hong is a resident of Seoul and his principal place of business is also located there. (Id. p.6 ¶ 8). Dongkwang seeks to assert jurisdiction over these proposed third-party defendants based on its allegation that "[o]n August 8, 2008, representatives of Ellan, Golden Bridge (including Hong), Dongkwang and AFB met at the Manhattan office of AFB to negotiate and sign the proposed

---

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). Dongkwang does not contend that it can satisfy any of these additional requirements with respect to the proposed two new third-party defendants.

16

distributorship agreement" and that "[a]t this meeting, Ellan, Golden Bridge and Hong represented to Dongkwang that Ellan had North American distribution rights for VS merchandise." (Id. p.8 ¶ 15). It contends therefore that its claims against these parties arise "from tortious acts committed by them within [New York] State." (Id. p.5 ¶ 2).

As noted, section 302 authorizes a court to exercise personal jurisdiction "over any non-domiciliary[. . .] who in person or through an agent[. . .] commits a tortious act within the state". N.Y. C.P.L.R. § 302(a)(2). In the present case, Dongkwang alleges that Hong and Golden Bridge committed tortious acts -- specifically, false representations as to Ellan's authority to resell VS products -- during the course of negotiations in New York on or about August 8, 2008. (Def.'s Am. Countercl. ¶¶ 14-15). Reading the proposed new pleading liberally in the light most favorable to Dongkwang, as we must, e.g., PDK Labs, Inc., 103 F.3d at 1108, we find that it adequately alleges a jurisdictional basis for the claims against Golden Bridge and Hong.[6]

---

[6] Since Dongkwang alleges tortious conduct committed by Hong and other agents of Golden Bridge while they were physically present in New York, no due-process issue is implicated. See GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d 308, 321 (S.D.N.Y. 2009) (where personal jurisdiction is appropriate

2.    <u>Alleged Failure to State a Claim</u>

Ellan also argues that the proposed amendments would, in part or in whole, be futile for a variety of substantive reasons. In effect, Ellan would have this court assess the new parts of the pleading under Rule 12(b)(6) criteria and find it wanting.

We start by noting the stringency of the standard that a movant must meet in order to obtain dismissal for failure to state a claim. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>accord</u>, <u>e.g.</u>, <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d

under section 302(a), the requirements of due process are met) (citing D.H. Blair & Co., Inc., 462 F.3d at 105; Cartier v. Oakley, 2006 WL 3635321, at *4 (S.D.N.Y. Dec. 11, 2006)); Tamam v. Fransabank Sal, 2010 WL 21088, at *8 (S.D.N.Y. Jan. 5, 2010) (defendant must commit tort while physically present in New York to be subject to jurisdiction under C.P.L.R. § 302(a)(2) (citing Bensusan Restaurant Corp., 126 F.3d at 29; Overseas Media, Inc. v. Skvortsov, 277 Fed. App'x 92, 95 (2d Cir. 2008); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 790 (2d Cir. 1999); Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736, 762 (S.D.N.Y. 2004))). Ellan does not argue otherwise.

18

471, 476 (2d Cir. 2006) (internal citation omitted). In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. E.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (internal citation omitted); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996).

The traditional test on a Rule 12(b)(6) motion required that the complaint not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Leibowitz v. Cornell Univ., 445 F.3d 586, 590 (2d Cir. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Supreme Court has recently rejected this formulation, however, and hence a complaint is now subject to dismissal unless its factual allegations, if credited, make the claim "plausible". See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 560-61, 570 (2007). "To state a facially plausible claim, a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Healthcare Fin. Group, Inc. v. Bank Leumi USA, 669 F. Supp. 2d 344, 347 (S.D.N.Y. 2009) (quoting Iqbal, 129 S.Ct. at

19

1949). "However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently 'raise a right to relief above the speculative level.'" Id. (quoting Twombly, 550 U.S. at 555).

When addressing a Rule 12(b)(6) motion, the court may not consider evidence proffered by the moving party. E.g., Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Healthcare Fin. Group, Inc., 669 F. Supp. 2d at 347 (internal citation omitted). Rather, it is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Roth, 489 F.3d at 509; Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999). Judged by these standards, Dongkwang's allegations pass muster.

Ellan first argues that the claims based on allegations about misrepresentations made by Golden Bridge and Hong (and, by implication, those by Ellan) are "irrelevant" and thus meritless

because the targeted representations did not mislead Dongkwang. (See Pl.'s Mem. Opp. at 7-8). According to Ellan, this is so because the agreement specified that the VS products in question were "overstock merchandise." (Id. at 8). Second, Ellan argues that the affirmative defenses and counterclaims based on Ellan's alleged failure to provide certain documents have no colorable merit because under the agreement Dongkwang was not entitled to receive documents from Ellan at the time of Dongkwang's breach. (Id. at 8-9). Third, it argues that Golden Bridge and Hong cannot be held liable because they acted as agents of a disclosed principal. (Id. at 9-10). We address each of these arguments in turn.

First, we consider plaintiff's emphasis on the fact that the agreement states that "[t]he VS products offered are generally current VS overstock merchandise." Although this section of plaintiff's brief is not a model of clarity, we can discern two possible arguments that plaintiff might be making. Plaintiff could be arguing that the proposed addition to defendant's counterclaims of a factual allegation that Ellan, AFB, Golden Bridge, and Hong misled defendant into believing that it was going to acquire the right to buy new merchandise is implausible because the Agreement itself -- which defendant proffers as an exhibit to the proposed

21

amended answer and counterclaims -- makes clear that, rather, Dongkwang was acquiring the right to buy overstock merchandise.[7] Alternatively, plaintiff could be arguing that, at any rate, even if the parties had misled defendant, several of defendants' new affirmative defenses and counterclaims nonetheless fail to state a claim because the parties' obligations under the Distributorship Agreement are governed by the plain language of the agreement; any evidence of misrepresentation is inadmissible under the parol evidence and thus irrelevant to contract-law defenses and claims.[8]

The first argument is plainly meritless. The contractual language stating that "[t]he VS products offered are generally current VS overstock merchandise" does not render implausible on its face defendant's allegation that plaintiff represented to it that the products were no more than three months old and that the available merchandise would be expanded to include new products

---

[7] See Pl.'s Mem. Opp. at 7-8 (claim that Dongkwang relied on alleged misrepresentations "is belied by the clear, explicit, and unambiguous language of the Agreement itself [....] Thus, Dongkwang could not have possibly have believed that it was buying new merchandise, rather than overstock merchandise").

[8] See Pl.'s Mem. Opp. at 8 ("all the attempts by Dongkwang to drag in extraneous, extrinsic claims and explanations in an attempt to vary the unambiguous language of the Agreement are barred by the Parol Evidence Rule.").

after the parties entered into the agreement, and that defendant relied on those representations. Whether or not the counterclaim-defendants represented that Ellan had the authority to enter into the Distributorship Agreement and whether it did not in fact have such authority are factual questions that cannot be resolved on a Rule 12(b)(6) motion nor by way of assessing the alleged futility of a motion to amend.[9]

The alternative argument is also unavailing. The language pointed to by plaintiff does not itself preclude the introduction of parol evidence of misrepresentation during the negotiations. E.g., Wall v. CSX Transp., Inc., 471 F.3d 410, 416 (2d Cir. 2006) (parol evidence generally admissible to demonstrate fraud in the inducement) (internal citations omitted); cf. Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 575 (2d Cir. 2005) (highly specific contractual language disclaiming reliance on prior representations "destroys the allegations in the plaintiff's complaint that the agreement was executed in reliance upon ...

_____

[9] See, e.g., Healthcare Fin. Group, Inc., 669 F. Supp. 2d at 347 ("The task of a court in ruling on a motion to dismiss is to 'assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005))).

23

contrary oral representations." (quoting <u>Danann Realty Corp. v.</u> <u>Harris</u>, 5 N.Y.2d 317, 320-21, 184 N.Y.S.2d 599, 602 (1959))). Moreover, even if evidence of the counterclaim-defendants' alleged misrepresentations were inadmissible to alter the meaning of the contract, this does not preclude Dongkwang, as a matter of law, from asserting separate tort claims against AFB, Golden Bridge, and Hong for fraud, negligent misrepresentation, and conspiracy. Even under a liberal reading of plaintiff's opposition, plaintiff does not seem to be arguing that Dongkwang's proposed amended pleading fails to allege facts that satisfy the elements of any of these claims.

Second, with respect to Ellan's argument that it was not required to turn over the documents allegedly withheld from Dongkwang at the start of the contractual relationship, this fails to demonstrate futility for similar reasons. This assertion -- even if accepted -- likewise does not demonstrate the futility of defendant's new tort claims, which turn on whether Ellan had the authority to contract for distribution to Dongkwang of the VS products and whether either it or the third-party defendants misrepresented Ellan's authority. These are factual issues to be determined by evidentiary presentations and not by counsel's

assertions in the course of a motion directed to the face of the pleadings.

Finally, plaintiff's third argument, which is based on the fact that Golden Bridge and Hong were disclosed agents, is seriously misguided. The premise for this argument is the rule that an agent for a disclosed principal may not be held personally liable for the contractual obligations entered into on behalf of their disclosed principal absent explicit evidence that the agent intended to be personally bound. See, e.g., Savoy Record Co. v. Cardinal Export Co., 15 N.Y.2d 1, 4, 254 N.Y.S.2d 521, 523 (1964). But Dongkwang is asserting claims against Golden Bridge and Hong for tortious conduct, not breach of contract. As summarized in the Restatement (Third) of Agency:

> An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.

ALI, Restatement (Third) Agency § 7.01 (2006). Comment (b) to this section further notes:

> The justification for this basic rule is that a person is responsible for the legal

25

> consequences of torts committed by that person. A tort committed by an agent constitutes a wrong to the tort's victim independently of the capacity in which the agent committed the tort. The injury suffered by the victim of a tort is the same regardless of whether the tortfeasor acted independently or happened to be acting as an agent or employee of another person.

The New York courts consistently adhere to this principle. See, e.g., Bedessee Imports, Inc. v. Cook, Hall & Hyde, Inc., 45 A.D.3d 792, 794, 847 N.Y.S.2d 151, 154 (2d Dep't 2007) (citing Am. Ref-Fuel Co. v. Resource Recycling, 281 A.D.2d 574, 575, 722 N.Y.S.2d 571, 572 (2d Dep't 2001); Reliance Ins. Co. v. Morris Associates, P.C., 200 A.D.2d 728, 730, 607 N.Y.S.2d 106, 108 (2d Dep't 1994); Tucci v. Hartford Cas. Ins. Co., 167 A.D.2d 387, 388, 561 N.Y.S.2d 802, 803 (2d Dep't 1990); Jones v. Archibald, 45 A.D.2d 532, 535, 360 N.Y.S.2d 119, 122 (4th Dep't 1974)); Ryan v. Preferred Mit. Ins. Co., 38 A.D.3d 1148, 1150, 834 N.Y.S.2d 338, 340 (3d Dep't 2007) (motion to dismiss denied because plaintiff had sufficiently averred reliance on agent's alleged negligent misrepresentation); cf. Pelton v. 77 Park Ave. Condominium, 38 A.D.3d 1, 11-12, 825 N.Y.S.2d 28, 35-36 (1st Dep't 2006) (dismissing complaint against agent because plaintiff only averred nonfeasance for which agent cannot be held liable unless agent assumed a duty to plaintiff).

26

In short, the fact that Golden Bridge and Hong were disclosed agents does not preclude the viability of Dongkwang's tort claims against them based on their own tortious conduct.

C.    <u>Undue Delay</u>

Finally, plaintiff argues that defendant's motion to amend is being interposed for the purpose of delay, and therefore should be denied. (Pl's Mem. Opp. at 10). Plaintiff notes that fact discovery was originally scheduled to be completed by December 31, 2009. (<u>Id.</u>; <u>see</u> <u>also</u> Order, July 17, 2009), and argues that "[i]f leave were granted to Dongkwang to file and serve its proposed Amended Answer with Counterclaim, the progress of discovery in this case would be halted for many months." (Pl's Mem. Opp. at 10). This argument rests on the premise that service of process on the two new third-party defendants would have to be effected in accordance with the requirements of the Hague Convention and that each new counterclaim-defendant therefore "would be afforded 60 days from the date of service to respond to the proposed Amended Answer with Counterclaims". (<u>Id.</u>). Based on that assertion, it argues that "all depositions would be on hold, because there would be no point in conducting depositions if they would all have to be repeated for

27

the benefit of the new counterclaim-defendants." (Id. at 10-11). In addition, plaintiff argues that defendant was "aware of all the facts that it seeks to assert in its proposed Amended Answer with Counterclaims since August of 2008, i.e., more than a half year before it served its original Answer with Counterclaims." (Id. at 11) (emphasis in original).

Plaintiff concludes that allowing such amendment by Dongkwang would thus "unfairly prejudice" its rights. (Id.). We assume that the prejudice to which plaintiff refers involves the alleged delay in addressing the merits of the case.

Although the Supreme Court noted in Foman that "undue delay" was a potential basis for declining to permit amendment, 371 U.S. at 182, "delay alone -- without an adequate showing of bad faith or prejudice -- is not a sufficient basis for denying leave to amend." Bialka v. Lenox Hill Hosp., 2001 WL 536933, at *1 (S.D.N.Y. May 21, 2001) (citing inter alia Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)); see also Ruotolo v. City of N.Y.,514 F.3d 184, 191 (2d Cir. 2008) (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 853, 856 (2d Cir. 1981)). The court nonetheless retains broad discretion to deny a Rule 15(a) motion in order to

28

thwart tactics that are dilatory, unfairly prejudicial, or otherwise abusive. Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001) (citing Foman, 371 U.S. at 182). Relevant considerations include the timeliness of the application, the explanation offered by the movant for any delays, the prejudice that would be caused other parties by granting the motion, and the disruption that might be occasioned in the court's calendar by virtue of the requested relief. See, MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998) (citing Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 71 (2d Cir. 1990)).

_____In this case, defendant did not move to amend its answer and counterclaims until the eve of the scheduled close of discovery, nine months after the filing of the complaint and seven months after Dongkwang filed its original answer and counterclaims. Although Dongkwang asserts that it waited until it received certain documents in September or October 2009 that reflected the relationship between Ellan on one side and Golden Bridge and Hong on the other,[10] it never satisfactorily explains why it did not name these two parties as defendants on its own claims at the outset,

---

[10] Def.'s Reply Mem. Law Supp. Mot. to Amend, Dec. 24, 2009 ["Def.'s Reply"] at 3.

since its proposed claims were based on what these agents of Ellan said during negotiations in 2008.

We note as well that defendant's claims of misrepresentation and resulting injury to itself can be adequately adjudicated, and full relief given, based on the current alignment of parties. We also observe that plaintiff's depositions of two representatives of Dongkwang were repeatedly adjourned at the request of defendant's counsel in the period before the filing of the current motion to amend. (Pl.'s Mem. Opp. at 2-3). Similarly, the parties noticed numerous other depositions -- many of non-parties -- that have yet to be taken. (Alexander Geiger, Esq. Letter to the Court, Mar. 8, 2010, at 1). It is also evident that if the two proposed Korea-based third-party defendants were allowed to be added, the case would stall further as we awaited service of the new pleading on them through the Hague Convention and resposes to it, and then coordination of the scheduling of the many pending depositions.

On balance, we view the addition of these proposed new litigants to the case as inadvisable. They are plainly marginal parties at best for Dongkwang's claims, and -- based on the history of the case -- we are inclined to view the current motion as

intended in major part to further extend and complicate the proceedings here. Moreover, their addition would severely disrupt the already delayed completion of pretrial proceedings. Accordingly, insofar as Dongkwang seeks to add them to its pleading, the motion is denied.

## CONCLUSION

For the reasons noted, we grant defendants' motion for leave to amend its answer with counterclaims except insofar as it seeks to join Golden Bridge and Hong as third-party defendants. All remaining fact discovery is to be completed by no later than May 31, 2010.

**Dated: New York, New York**
**April 2, 2010**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

31

Copies of the foregoing Memorandum and Order have been mailed today to:

Alexander Geiger, Esq.
Geiger and Rothenberg LLP
920 N. Broad Street, Suite 8
Landsdale, Pennsylvania 19446

Carlton R. Asher, Jr., Esq.
Kim & Bae, P.C.
110 East 59th Street, Suite 2900
New York, New York 10022

Christine M. Bae, Esq.
Kim & Bae, P.C.
110 East 59th Street, 29th Floor
New York, New York 10022

Melanie Irina Wiener, Esq.
Cobert, Haber & Haber
1050 Franklin Avenue, Suite 507
Garden City, New York 11530