Bong June Kim (BK-6989)
Carlton R. Asher, Jr. (CA-8530)
KIM & BAE, P.C.
110 East 59th Street, 29th Floor
New York, New York 10022
(212) 319-6888
*Attorneys for Defendant and Counterclaim-Plaintiff,*
*Dongkwang International Co., Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| ELLAN CORP., INC., | : | |
| Plaintiff, | : | 09 Civ. 00414 (LAP)(MHD) |
| - against - | : | **AMENDED ANSWER** |
| | | **WITH COUNTERCLAIMS** |
| DONGKWANG INTERNATIONAL CO., LTD., | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DONGKWANG INTERNATIONAL CO., LTD.,                    :

                        Counterclaim-Plaintiff,                    :

            - against -                    :

ELLAN CORP., INC. and AMERICAN FASHION                    :
BRANDS, LLC,

                  :

                        Counterclaim-Defendants.                    :

                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Defendant, Dongkwang International Co., Ltd. ("Defendant" or "Dongkwang"), by and

through its attorneys, Kim & Bae, P.C., hereby answers the Complaint (the "Complaint") filed

herein by plaintiff, Ellan Corp., Inc. ("Plaintiff" or "Ellan"), as follows:

1.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

2.      Admits the allegations contained in paragraph 2 of the Complaint.

3.      Denies the allegations contained in paragraph 3 of the Complaint and refers the Court to the alleged agreement referred to therein for a full and complete statement of its content.

4.      Denies the allegations contained in `paragraph 4 of the Complaint, except admits that Plaintiff purports to invoke the Court's jurisdiction as alleged therein.

5.      Denies the allegations contained in paragraph 5 of the Complaint, except admits that Plaintiff purports to base the venue of this action as alleged therein.

**WITH RESPECT TO THE ALLEGED**
**FIRST CAUSE OF ACTION**

6.      Denies the allegations contained in paragraph 6 of the Complaint, except refers the Court to the alleged Distributorship Agreement referred to therein (the "Distributorship Agreement") for a full and complete statement of its content.

7.      Denies the allegations contained in paragraph 7 of the Complaint.

8.      Denies the allegations contained in paragraph 8 of the Complaint.

9.      Denies the allegations contained in paragraph 9 of the Complaint.

10.     Denies the allegations contained in paragraph 10 of the Complaint.

11.     Denies the allegations contained in paragraph 11 of the Complaint.

12.     Denies the allegations contained in paragraph 12 of the Complaint, except refers the Court to the Distributorship Agreement for a full and complete statement of its content.

13.     Denies the allegations contained in paragraph 13 of the Complaint and refers the Court to the Distributorship Agreement for a full and complete statement of its content.

14.     Denies the allegations contained in paragraph 14 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

15.     The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

16.     Plaintiff's claims are barred by the doctrines of waiver, estoppel and/or acquiescence.

## THIRD AFFIRMATIVE DEFENSE

17.     Plaintiff's claims are barred because Plaintiff has suffered no damage caused by the actions alleged in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

18.     Plaintiff's claims are barred by reason of Plaintiff's failure of performance pursuant to the Distributorship Agreement.

## FIFTH AFFIRMATIVE DEFENSE

19.     Plaintiff's claims are barred due to its prior or anticipatory repudiation of the terms of the Distributorship Agreement which relieved Defendant from the requirements of performance under the terms of the alleged contract.

## SIXTH AFFIRMATIVE DEFENSE

20.     Plaintiff's claims are barred due to Plaintiff's prior and substantial breach of its material obligations under the Distributorship Agreement.

## SEVENTH AFFIRMATIVE DEFENSE

21.     Plaintiff's claims are barred by reason that Defendant was induced to enter into the Distributorship Agreement based on Plaintiff's false and misleading representations of material facts relating to the subject matter of the alleged contract, which Defendant thereafter declared null and avoid and otherwise rescinded in all respects.

## EIGHTH AFFIRMATIVE DEFENSE

22.     Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff failed to exercise reasonable care and diligence to mitigate its alleged damages.

## NINTH AFFIRMATIVE DEFENSE

23.     Plaintiff's claims are barred because this Court lacks personal jurisdiction over Defendant.

## TENTH AFFIRMATIVE DEFENSE

24.     Plaintiff's claims are barred, in whole or in part, because the Distributorship Agreement is unenforceable as a matter of public policy under New York law.

## ELEVENTH AFFIRMATIVE DEFENSE

25.     Plaintiff lacks standing to assert the claims set forth in the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

26.     Plaintiff assumed the risk of the damages and injuries alleged in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

27.     Plaintiff's claims are barred, in whole or in part, due to Defendant's rights of setoff and recoupment arising from Defendant's counterclaims hereinafter set forth.

## FOURTEENTH AFFIRMATIVE DEFENSE

28.     This action and any relief sought by Plaintiff may be barred in whole or in part by additional defenses that cannot now be articulated because of the generality of aspects of Plaintiff's pleadings and the fact that discovery has not yet been completed.   Accordingly,

Defendant reserves its right to supplement the foregoing and to raise additional defenses as may appear during the progress of this action to the full extent allowed under applicable law.

## COUNTERCLAIMS

Defendant and counterclaim plaintiff, Dongkwang International Co., Ltd. ("Dongkwang") asserts the within counterclaims against plaintiff and counterclaim defendant Ellan Corp., Inc. ("Ellan") and additional counterclaim defendant American Fashion Brands, LLC ("AFB") (collectively "Counterclaim Defendants") and in support thereof alleges, upon knowledge with respect to its own acts and upon information and belief as to all other matters, as follows:

### Jurisdiction and Venue

1.      This Court has supplemental jurisdiction over the claims asserted in these counterclaims pursuant to 28 U.S.C. § 1367 and the common law principles of ancillary jurisdiction.   The claims asserted in these counterclaims arise out of the transactions and occurrences alleged in Ellan's claims contained in its Complaint in this action and are so related to those claims that they form a part of the same case or controversy.   This Court also has jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship.   The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      Personal jurisdiction over Counterclaim Defendants is based on CPLR 301, in that Ellan and AFB regularly and continuously transact business from and within this State, and on CPLR 302(a), in that the counterclaims arise from Counterclaim Defendants' transaction of business within this State and from tortious acts committed by them within this State.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

5

**Parties**

4.      Dongkwang was at all relevant times and still is a Korean corporation with its principal place of business located at 459-14 Kasan-dong, Geumchon-gu, Seoul, Republic of Korea.  At all relevant times, Dongkwang was primarily engaged in the business of marketing apparel through its own retail stores located in Korea.

5.      Ellan is a Pennsylvania corporation with its principal place of business located at 2700 Germantown Avenue, Philadelphia, Pennsylvania 19133.

6.      AFB is a limited liability company with its principal place of business located at 130 West 42nd Street, New York, New York 10036.

**Factual Background**

7.      In 2008, Dongkwang planned to launch a Victoria's Secret ("VS") line of merchandise in South Korea.   Initially, Dongkwang held discussions with Golden Bridge Financial Advisory Co., Ltd. ("Golden Bridge") , AFB's agent, for the purpose of obtaining VS distribution rights in South Korea.  Golden Bridge represented to Dongkwang, primarily through Golden Bridge's authorized representative, Shi Hyun Hong ("Hong"), that AFB would be able to supply VS merchandise to Dongkwang for the South Korea market.

8.      In that connection, Golden Bridge and Hong made representations to Dongkwang that AFB's VS merchandise was "stockpile."  Golden Bridge and Hong defined "stockpile" to be VS merchandise that was released in North America within the immediately preceding three-month period and that such merchandise would not be materially different from brand new VS merchandise.

9.      In or about July 2008, Dongkwang learned that AFB had rights only to VS's surplus merchandise, *i.e.*, old inventory, or irregular inventory, and that AFB's rights to sell such

merchandise were limited to AFB's own stores.  On this basis, Dongkwang expressed concern to Golden Bridge and Hong that obtaining VS merchandise from AFB would not be suitable for purchase by Dongkwang for resale in its own retail stores.

10.   In response, Golden Bridge and Hong introduced Dongkwang to Ellan, which Golden Bridge and Hong represented to Dongkwang to be a company that had the authority to sell new and surplus VS merchandise for resale in South Korea and that Ellan's VS merchandise was three months old or less.  Golden Bridge and Hong, then acting as Ellan's authorized agents for this purpose, represented to Dongkwang that Ellan was the official North American wholesaler and broker for Limited Brands ("Limited") and its subsidiary Victoria's Secret Stores, LLC ("Victoria's Secret") and that Ellan had the license to distribute and sell VS merchandise in South Korea.  Golden Bridge and Hong, as Ellan's agents, also represented to Dongkwang that once Dongkwang entered into an agreement with Ellan and the business of marketing VS merchandise in South Korea became successful, the restrictions on selling new VS merchandise would be lifted and Dongkwang would also be able to market new merchandise in South Korean as well.  Relying on these representations, Dongkwang pursued its negotiations for a distributorship agreement for VS merchandise with Ellan.

11.   In order to confirm that Ellan's VS merchandise was satisfactory for Dongkwang's specific purposes and that such merchandise would be marketable in South Korea, Dongkwang's representatives on August 4 and August 5, 2008 visited the warehouse and showroom facilities maintained by AFB and its subsidiaries in Ningbo and Shanghai, China to inspect Ellan's VS merchandise which Ellan, AFB and Golden Bridge representatives informed Dongkwang was located in those facilities.

12.   In connection with the visit by Dongkwang's representatives to the Ningbo and

Shanghai facilities and the ensuring negotiations regarding the proposed distributorship agreement between Ellan and Dongkwang, representatives of AFB, Ellan and Golden Bridge (including Hong) assured Dongkwang that new and stockpile (no older than three month) VS merchandise would be available for purchase by Dongkwang pursuant to the proposed distributorship agreement with Ellan. Ellan and Golden Bridge insisted that the scheduled August 8, 2008 signing date of the distributorship agreement could not be delayed without risking the deal falling through. Relying on the above-referenced representations and assurances on the part of AFB, Ellan, Golden Bridge and Hong, Dongkwang's representatives traveled, along with Hong and other representatives of Golden Bridge, to New York City to complete and sign the proposed distributorship agreement with Ellan on or about August 7, 2008.

13. On August 8, 2008, representatives of Ellan, Golden Bridge (including Hong), Dongkwang and AFB met at the Manhattan office of AFB to negotiate and sign the proposed distributorship agreement. At this meeting, Ellan, Golden Bridge and Hong represented to Dongkwang that Ellan had North American distribution rights for VS merchandise. Ellan, Golden Bridge, Hong and AFB represented to Dongkwang at the meeting that Ellan was authorized by Limited and/or Victoria's Secret to enter into the proposed distributorship agreement and resell VS merchandise thereunder, that Ellan had authority to sell and distribute VS merchandise in South Korea and that Ellan had the ability to obtain a license for Dongkwang to sell new merchandise in South Korea. Moreover, Ellan specifically represented to Dongkwang at the meeting that it had documentation recognizing Ellan's North American distributorship rights for VS merchandise as well as documentation showing that Ellan was authorized by Limited and/or Victoria's Secret to enter into the proposed distributorship agreement and resell VS merchandise to Dongkwang thereunder. Ellan represented to

8

Dongkwang that it would provide Dongkwang with this documentation upon signing the proposed distributorship agreement.

14.    In reliance upon the representations and promises made by Ellan, Golden Bridge, Hong and AFB referred to above, Dongkwang entered into three agreements with Ellan concerning the purchase and distribution of VS merchandise for the South Korean market, all executed and dated on August 8, 2008:  a Distributorship Agreement (the "Distributorship Agreement"), a Memorandum of Understanding (the "MOU") and a Memorandum of Agreement (the "MOA"), copies of which are annexed hereto as Exhibits A, B and C, respectively.

15.    Based on Counterclaim Defendants' representations and assurances set forth above, Dongkwang incurred costs and expense in connection with its plan to launch its new venture involving VS merchandise.

16.    After signing the Distributorship Agreement, MOU and MOA with Ellan, Dongkwang requested Ellan to produce the promised documentation recognizing Ellan's distributorship rights concerning VS merchandise in North America and showing that Ellan was authorized to enter into the Distributorship Agreement and resell VS merchandise to Dongkwang thereunder. Ellan failed and refused to provide such documents to Dongkwang. As of this date, Dongkwang has not received any such documents from any source.

17.    In response to Dongkwang's requests for such documentation, Ellan produced two documents:  a No-agent Letter (the "No-agent Letter") between AFB, Ellan, Limited and another party and an Inventory Purchase Agreement (the "Inventory Purchase Agreement") between AFB and Ellan. Copies of the No-agent Letter and the Inventory Purchase Agreement are annexed hereto as Exhibits D and E, respectively.

18.    These documents indicated that Ellan did not have any authority to distribute VS

9

merchandise to third parties and was unable to sell VS merchandise it purchased from AFB outside its own brick and mortar stores.  Therefore, Ellan was not authorized to enter into the Distributorship Agreement with Dongkwang or to resell VS merchandise to Dongkwang thereunder.

19.     The No-agent Letter explicitly defines Ellan as a Purchaser who "shall only sell [VS] Merchandise through its own bricks and mortar retail stores in the geographic locations … approved in accordance with … the Sell-Off Agreement.    Purchaser may not sell the Merchandise *in any other manner* including, but not limited to, jobbers, wholesalers, over the internet,…." (*Emphasis added*).

20.     Neither AFB nor Ellan had any authority to grant rights to third parties to distribute VS merchandise.  Furthermore, the No-agent Letter and the Inventory Purchase Agreement specifically confined Ellan's rights to surplus VS merchandise (but only under certain limited circumstances) and not, in any event, to new merchandise as represented by Counterclaim Defendants to Dongkwang.

21.     In these circumstances, Dongkwang declared the Distributorship Agreement null and void pursuant to letter dated August 9, 2008.

22.     Ellan, AFB, Golden Bridge and Hong knowingly and willingly conspired with one another to induce Dongkwang to enter into the Distributorship Agreement with Ellan after Dongkwang's direct  negotiations with AFB fell through.  Ellan, AFB, Golden Bridge and Hong conspired and agreed with one another that they would falsely represent to Dongkwang orally and in writing, as they in fact did, that Ellan had authority to sell and license the resale of VS merchandise for the South Korea market and to enter into a distributorship agreement for such merchandise with Dongkwang.  Ellan, AFB, Golden Bridge and Hong all knew or should have

known that none of them had the authority to sell or license the resale of VS merchandise purchased from Limited and/or its affiliates to Dongkwang for the South Korean market and that Dongkwang would have no authority to resell VS merchandise obtained from them in that market.

23.     Pursuant to their plan and scheme, Ellan, AFB, Golden Bridge and Hong intended to earn substantial commissions, other income, or financial advantage from Dongkwang's payment for VS merchandise pursuant to the Distributorship Agreement, including merchandise located in AFB's (and its affiliates') warehouse in Ningbo, China, which they were not authorized by Limited or its affiliates to sell, resell or license to third parties such as Dongkwang.

24.     The overt acts perpetrated by Ellan, AFB, Golden Bridge and Hong occurred during July and August 2008 and include their false and improper communications with Dongkwang by email, face to face communications, and draft and final forms of the agreements with Dongkwang as well as their own communications between and among themselves in furtherance of their conspiratorial and other improper conduct.  In this regard, Golden Bridge and Hong served as agents and intermediaries for Ellan and AFB, and AFB and its Chinese subsidiaries acting under its direction, served as agents for one another and for Ellan.

25.     Counterclaim Defendants' representatives who were actively involved in the creation and implementation of the aforesaid fraudulent scheme and plan include Saeda Kim (Rich Kim), President, Han Ha Kim, Executive Director, and Nanjala Warman ("Warman"), Representative, for Ellan; Michael Sabe, President, and other New York City employees, for AFB; Hong, General Director, Hyung Wook Kim, Department Head, and Warman, for Golden Bridge; and Teng Sheng, President, and other personnel for AFB's Chinese subsidiaries.

## FIRST COUNTERCLAIM AGAINST ELLAN
### (Declaratory Relief Regarding Distribution Agreement)

26.     Dongkwang repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

27.     An actual controversy of a justiciable nature exists between Dongkwang and Ellan with respect to which Dongkwang has no adequate remedy at law, and this controversy may be determined by a judgment of this Court pursuant to 28 U.S.C. § 2201.

28.     Ellan has thus far refused to acknowledge and agree that the Distributorship Agreement is null and void, that Dongkwang timely and appropriately declared the Distributorship Agreement to be null and void and that Dongkwang has no responsibility or liability thereunder for any purpose to Ellan.

29.     Accordingly, Dongkwang requests that the Court declare the following:

(a)     The Distributorship Agreement is null and void in all respects;

(b)     Dongkwang timely and appropriately declared the Distributorship Agreement null and void and otherwise effectively rescinded the Distributorship Agreement as of August 8, 2008;

(c)     Dongkwang has no responsibilities owing to Ellan pursuant to the Distributorship Agreement;

(d) Dongkwang has no liability to Ellan in connection with the subject matter of this action;

(e) Ellan breached its oral and written representations to Dongkwang that it was authorized by Limited and/or Victoria's Secret to distribute and sell VS merchandise in South Korea and that it was authorized to enter into and perform its obligations under the Distributorship Agreement;

(f)   in the alternative, Ellan's prior breach and anticipatory repudiation of the Distributorship Agreement relieved Dongkwang from the requirements of performance under the terms of the Distributorship Agreement.

## SECOND COUNTERCLAIM AGAINST ELLAN
### (Breach of Contract)

30.   Dongkwang repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

31.   By reason of the foregoing, Ellan breached the material terms of the Distributorship Agreement with Dongkwang.

32.   As a direct and proximate result of Ellan's actions, Dongkwang has suffered and continues to suffer damages.

## THIRD COUNTERCLAIM AGAINST ALL COUNTERCLAIM DEFENDANTS
### (Fraud)

33.   Dongkwang repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

34.   By reason of the foregoing, Counterclaim Defendants have defrauded Dongkwang.

35.   The foregoing conduct on the part of Counterclaim Defendants was intentional and performed with malice.

36.   The Counterclaim Defendants made material misrepresentations of presently existing or past facts and/or concealed or suppressed material facts, specifically, by misrepresenting that Ellan and AFB had authority from Limited and/or Victoria's Secret to distribute VS merchandise, new or surplus, to Dongkwang for resale in South Korea.

37.    The Counterclaim Defendants acted with *scienter* or had knowledge of the misrepresentations and/or concealments that they engaged in, or recklessly disregarded the truth of the statements and communications which they made to Dongkwang.

38.    The Counterclaim Defendants intended that Dongkwang rely on such misrepresentations and/or concealments.

39.    Dongkwang detrimentally relied on such statements or omissions on the part of the Counterclaim Defendants.

40.    As a direct and proximate result of the Counterclaim Defendants' actions, Dongkwang has suffered and continues to suffer damage.

41.    By reason of the foregoing, Dongkwang is entitled to exemplary and punitive damages in at least the amount of $3,000,000.

## FOURTH COUNTERCLAIM AGAINST ALL COUNTERCLAIM DEFENDANTS
### (Negligent Misrepresentation)

42.    Dongkwang repeats and realleges each and every allegation set forth above with same the force and effect as if fully set forth herein.

43.    By reason of the foregoing, the Counterclaim Defendants negligently made material misrepresentations of presently existing or past facts and/or concealed or suppressed material facts, specifically, by misrepresenting that Ellan and AFB had authority from Limited and/or Victoria's Secret to distribute VS merchandise, new or surplus, to Dongkwang for resale in South Korea.

44.    The Counterclaim Defendants intended that Dongkwang rely on such misrepresentations and/or concealments.

45.    Dongkwang detrimentally relied on such statements or omissions on the part of the Counterclaim Defendants.

46.     As a direct and proximate result of the Counterclaim Defendants' actions, Dongkwang has suffered and continues to suffer damage.

## FIFTH COUNTERCLAIM AGAINST ELLAN
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

47.     Dongkwang repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

48.     Ellan owed Dongkwang a duty of good faith and fair dealing implied in every contract.

49.     Ellan deliberately and knowingly breached this duty by, among other things, misrepresenting that it had authority from Limited and/or Victoria's Secret to distribute VS merchandise, new or surplus, to Dongkwang in South Korea.

50.     The contracts and/or agreements described *supra* contain an implied covenant of good faith and fair dealing, pursuant to the common law of New York.

51.     As a direct and proximate result of the Counterclaim Defendants' actions, Dongkwang has suffered and continues to suffer damage.

## SIXTH COUNTERCLAIM AGAINST ALL COUTNERCLAIM DEFENDANTS
### (Civil Conspiracy)

52.     Dongkwang repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

53.     As hereinabove set forth, the Counterclaim Defendants agreed between and/or among themselves to conspire or scheme, to engage in an illegal or unlawful act, or to engage in a lawful or legal act by unlawful or illegal means, and have taken at least one act in furtherance thereof.

54.    As a direct and proximate result of the Counterclaim Defendants' actions, Dongkwang has suffered and continues to suffer damage.

55.    By reason of the foregoing, Dongkwang is entitled to exemplary and punitive damages in at least the amount of $3,000,000.

## SEVENTH COUNTERCLAIM AGAINST AFB
### (Contribution and Indemnification)

56.    Dongkwang repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

57.    As hereinabove set forth, Dongkwang was induced by fraudulent and other improper conduct on the part of the Counterclaim Defendants to negotiate and enter into the Distributorship Agreement with Ellan.

58.    If Dongkwang is found liable to Ellan for damages in connection with or arising out of the Distributorship Agreement and/or the sale of VS merchandise, as a consequence of any acts or omissions, then Dongkwang is entitled to indemnification and/or contribution from AFB for all or any part of the verdict or judgment that Ellan may recover against Dongkwang.

WHEREFORE, defendant and counterclaim plaintiff, Dongkwang International Co., Ltd. demands judgment as follows:

(a)    awarding plaintiff, Ellan Corp., Inc. nothing by reason of the allegations contained in the Complaint and dismissing the Complaint and any causes of action therein against Dongkwang in their entirety with prejudice;

(b)    awarding Dongkwang on its first counterclaim a declaratory judgment declaring the following:

(i)    the Distributorship Agreement is null and void in all respects;

(ii)    Dongkwang timely and appropriately declared the Distributorship

Agreement null and void and otherwise effectively rescinded the Distributorship Agreement as of August 8, 2008;

(iii)    Dongkwang has no responsibilities owing to counterclaim defendant Ellan pursuant to the Distributorship Agreement;

(iv)    Dongkwang has no liability to Ellan in connection with the subject matter of this action;

(v)    Ellan breached its oral and written representations to Dongkwang that it was authorized by Limited and/or Victoria's Secret to distribute and sell VS merchandise in South Korea and that it was authorized to enter into and perform its obligations under the Distributorship Agreement;

(vi)    in the alternative, Ellan's prior breach and anticipatory repudiation of the Distributorship Agreement relieved Dongkwang from the requirements of performance under the terms of the Distributorship Agreement.

(c)    awarding Dongkwang on its second counterclaim against Ellan for compensatory damages in an amount to be determined at trial, together with pre- and post-judgment interest thereon;

(d)    awarding Dongkwang on its third counterclaim against Ellan and additional counterclaim defendant American Fashion Brands, LLC, jointly and severally, for compensatory damages in an amount to be determined at trial, together with pre- and post-judgment interest thereon, and exemplary and punitive damages in at least the amount of $3,000,000;

(e)    awarding Dongkwang on its fourth counterclaim against Ellan and AFB, jointly and severally, for compensatory damages in an amount to be determined at trial, together with pre- and post-judgment interest thereon;

(f)    awarding Dongkwang on its fifth counterclaim against Ellan for compensatory damages in an amount to be determined at trial, together with pre- and post-judgment interest thereon;

(g) awarding Dongkwang on its sixth counterclaim against Ellan and AFB, jointly and severally, for compensatory damages in an amount to be determined at trial, together with pre- and post-judgment interest thereon, and exemplary and punitive damages in at least the amount of $3,000,000;

(h) awarding Dongkwang on its seventh counterclaim for indemnity and/or contribution against AFB, such damages for all or part of any sums that may be adjudged in favor of Ellan against Dongkwang;

(i) awarding Dongkwang recovery of its costs and disbursement, including reasonable attorneys' fees, incurred in defending this action and prosecuting its counterclaims herein;

(j) awarding Dongkwang such other and further relief as to this Court may seem just and proper.

## JURY DEMAND

Dongkwang demands a trial by jury on all issues triable by jury in this action.

Dated: New York, New York
   April 28, 2010

      KIM & BAE, P.C.

      By _Carlton R. Asher_
       Bong June Kim (BK-6989)
       Carlton R. Asher, Jr. (CA-8530)
       110 East 59th Street, 29th Floor
       New York, New York 10022
       Phone: (212) 319-6888
      Attorneys for Defendant and Counterclaim-
      Plaintiff, *Dongkwang International Co., Ltd.*

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2010, the foregoing Amended Answer With Counterclaims was filed using the CM/ECF system. Notice of this filing will be sent to the following counsel of record for the interested parties by operation of the Court's electronic filing system.

Alexander Geiger, Esq.
Geiger and Rothenberg, LLP
920 N. Broad Street, Suite 8
Lansdale, PA 19446
*Attorneys for Plaintiff and Counterclaim*
*Defendant, Ellan Corp., Inc.*

Melanie I. Weiner, Esq.
Cobert, Haber & Haber
1050 Franklin Avenue, Suite 507
Garden City, NY 11530
*Attorneys for Additional Counterclaim-*
*Defendant, American Fashion Brands, LLC*

Carlton R. Asher, Jr. (CA-8530)
KIM & BAE, P.C.
110 East 59th Street, 29th Fl.
New York, New York 10022
Phone:  (212) 319-6888
Fax:     (212) 319-7539

19

EXHIBIT A

# DISTRIBUTORSHIP AGREEMENT

This Agreement is made and entered into this 8th August, 2008 by and between Ellan Corp. Inc., having its principal office at 2700 Germantown Avenue Philadelphia, PA 19133, USA (hereinafter referred to as "ELLAN") and DONGKWANG INTERNATIONAL CO., LTD. having its principal office at 459-14 Kasan-dong. Geumchon-gu, Seoul, Korea (hereinafter referred to as "DONGKWANG").

## WITNESSETH

WHEREAS, ELLAN has the rights to distribute certain branded products it has purchased known as VICTORIA'S SECRET(herein after referred to as "VS") from The Limited Group (herein after referred to as "LIMITED").

The VS products offered are generally current VS overstock merchandise.

WHEREAS, DONGKWANG is a Distributor of apparel in South Korea.

NOW THEREFORE, in consideration of the mutual promises, obligations and agreements contained herein, the parties hereby agree as follows:

Article 1. (Merchandise)

1.1 Merchandise shall be Whatever VS product ELLAN may purchase.

1.2 Merchandise shall be understood to have the meaning as follows:

Bra, Panty, Vest, T-shirt, Sweat Shirt, Long Bottom, Shorts, Skirts, Pajama, Lingerie, Accessory, etc. (include VS PINK) of VS lines

1.3 DONGKWANG shall purchase VS beauty line (fragrance, body care, makeup, skin care. hair care, etc.) from ELLAN in 6 months if ELLAN acquires such right from the LIMITED.

1.4 ELLAN shall give DONGKWANG all the possible VS merchandise and the information about the merchandise sold in USA.

Article 2. (Territory)

ELLAN hereby appoints DONGKWANG as its exclusive distributor of the VS products it has purchased for the country of South Korea

Article 3. (Channel of Sales)

3.1 Channel of Sales are as follows

3.1.1 Off-line

3.1.2 On-line : Only in Korean

3.2 ELLAN shall prohibit the illegal channel of sales in South Korea directly or ELLAN will authorize DONGKWANG or an appointed law firm agreeable by both parties to prohibit the illegal channel of sales in South Korea.

3.3 Promotion and Advertising affairs are as follows.

- Any advertising must be approved by LIMITED.

3.4 ELLAN shall provide DONGKWANG with model pictures (include detail information about model), advertising (include the fashion show advertising), promotion information, manual for managing shop and etc. for free under LIMITED's approval.

Article 4. (Purchase)

4.1 As an initial purchase, DONGKWANG shall purchase First Products, approximately 55,000~60,000 units of VS products currently owned by ELLAN and warehoused in Ningbo, China.

4.2 DONGKWANG can select merchandise (which produced within 3 months) to purchase by visiting the warehouse in Ningbo, China. ELLAN will give full supports to DONGKWANG in order for the DONGKWANG to select merchandises at the warehouse.

4.3 ELLAN shall support information and data about merchandise to be purchased.

4.4 ELLAN shall give full support to DONGKWANG to purchase merchandise by item, size, style and color according to Korean market property.

Article 5. (Price and Payment)

5.1 The prices of the Merchandise may be determined mutually by both parties from time to time.

5.2 The price of the First Product shall be 33% + 0.55$ per units of the actual retail price of the unit RETAIL value of each unit as set by the Victoria's Secret stores.

As a guide and purely for the purpose of example, the parties acknowledge that if the retail price if a unit is $10.00 and the price charged by ELLAN to DONGKWANG is agreed to be 33% + 0.55$ per unit of the United States retail price of the item then the price charged to DONGKWANG by ELLAN for that unit shall be $3.85.

5.3 The price of the products if purchased more than 200,000 units per year, excess products' price will be negotiated.

5.4 All payments for products purchased by DONGKWANG from ELLAN will be FOB (free On Board) seller's port of purchase and shall be made by either cash or by a confirmed irrevocable Letter of Credit in United States currency, pursuant to terms and conditions

mutually agreed to by the parties in writing.

It is understood that any Letter of Credit will be an "at site letter of credit." Currently the initial 55,000~60,000 pieces are located at Atrium Warehouse, Columbus, Ohio or Ningbo, China.

5.5 DONGKWANG shall be free to fix its own resale prices for the Merchandise.

5.6 DONGKWANG shall deposit US $ 300,000 for deposit of exclusive rights to sell the ELLAN purchased merchandise in South Korea by cash or check payable to ELLAN Corp INC. ELLAN will refund the deposit after 1 year if DONGKWANG carries all the duties as agreed and didn't violate any regulations or requirements from LIMITED and ELLAN.. The refund shall be guaranteed legally as long as DONGKWANG keeps the agreements.

Banking details for ELLAN are as follows:

> Bank : Wachovia / 75 St. James Place, Ardmore. PA. 19003 / Tel) 610-649-0901
>
> Account Number : 2000017924821
>
> Routing Number : 031000503
>
> SWIFT : PMBPUS33

Article 6. (Minimum Purchase)

DONGKWANG shall purchase the Merchandise from ELLAN at least in the following amount,

6.1 First Contract Year : 200,000 pcs

6.2 Second Contract Year : 200,000 pcs.

6.3 Third Contract Year : 200,000 pcs.

6.4 The Quantity of the Merchandise of Article 1 shall be determined mutually by both parties upon ELLAN's acquiring of the rights.

Article 7. (Ordering and Delivery of Merchandise)

7.1 DONGKWANG shall inspect and examine the goods at the warehouse at its own cost.

7.2 The product is being sold FOB at site.

7.3 ELLAN shall ship merchandise to DONGKWANG within 14 days of an order. If the merchandise ordered has been delayed due to the situation before having on board, DONGKWANG can ask ELLAN to exchange or refund.

7.4 When DONGKWANG inspects and examines the goods at the DONGKWANG's port area, if the shortage or excess of the quantity is founded, DONGKWANG can notify this to ELLAN by document and both parties will settle up the shortage or excess by credit.

7.5 If a fatal defect in goods (i.e. goods cannot be sold by repairing) is founded and the defected items are more than 0.01% of the shipment, ELLAN shall exchange the goods or

credit it towards the next order.

7.7 ELLAN shall give the information of the merchandise purchasing. The retail price and the point of time taken out of the warehouse shall be included in the information given.

Article 8. (DONGKWANG's Responsibility)

8.1 DONGKWANG shall use its best efforts to promote the sales of the Merchandise in South Korea and agrees to purchase the number of pieces as are set forth in Article 6.

8.2 DONGKWANG shall comply with all Procedures for Sale and Advertising. It is emphasized that at no time may DONGKWANG advertise or otherwise infer that it is a VS store or an agent of either ELLAN or LIMITED.

8.3 DONGKWANG recognizes that it has the obligation of securing all necessary governmental approvals to import the VS product into its country of designation but shall not be obligated to purchase or sell any product, which may not comply with such laws.

8.4 DONGKWANG shall comply with all applicable laws to include: ordinances, regulations, rules, orders and the like of any governmental entity or body applicable to DONGKWANG's area of business.

8.5 DONGKWANG will be responsible to fulfill this contract. When and if DONGKWANG breaches this responsibility, DONGKWANG shall reimburse the quadruple of the price of the total quantity as for Article 6 (200,000 units X 4).

Nothing herein shall be construed as preventing DONGKWANG from filing a bona fide suit to contest the applicability or validity of such laws.

Article 9 (ELLAN's Responsibility)

9.1 ELLAN will give full supports to DONGKWANG in order for Victoria Secret to success in Korea by giving supports and guidelines in Sales and Marketing.

9.2 ELLAN will give full supports to DONGKWANG when Limited branches out officially to Korea, for the DONGKWANG to have first and unique rights to negotiate with Limited.

9.3 ELLAN will support VS body product line to the DONGKWANG within 6 months if ELLAN acquires such rights from the LIMITED. The price and quantity will be negotiated by both parties.

9.4 If ELLAN disobeys the exclusive distributorship rights of DONGKWANG without any reason, ELLAN shall reimburse the quadruple of total invoice price which DONGKWANG has purchased previously. When and if ELLAN terminates the contract without any reason, DONGKWANG is entitled to a bona fide suits to reimburse for their business expense

Article 10. (Trademark)

10.1 DONGKWANG recognizes that any of the Trademarks, trade names, designs, copyrights and other proprietary rights, used on or embodied in the Merchandise shall remain the exclusive property of LIMITED.

DONGKWANG shall not have or acquire any right, title or interest in Proprietary Rights.

10.2 DONGKWANG shall not alter, deface, remove, cover or mutilate in any manner the Trademark, serial or model number, brand, or LIMITED name attached or affixed to any of the Merchandise.

10.3 CHAIN OF COMMAND - Limited Group has given AFB distribution rights to sell Victoria's Secret 1st quality discontinued and surplus inventory. ELLAN has the exclusive rights to the Korean market through AFB of the 1st quality discontinued and surplus inventory. ELLAN has chosen DONGKWANG to solely distribute the VS merchandise that ELLAN has acquired from AFB in the Korean market. Any mention of LIMITED and its relations will acknowledge the right order to the chain of command. When and if the DONGKWANG acquires the rights of the new products and VS license, the Chain of the command is from LIMITED to ELLAN and from ELLAN to the DONGKWANG.

Article 11. (Effective date and Duration)

11.1 This Agreement shall become effective upon its execution by the parties hereto and shall be renewed each year so long as DONGKWANG has performed the necessary purchases of product as set forth in Article 6. Provided that there is no other breach of this Agreement which has not been cured.

11.2 This Agreement shall remain in effect so long as ELLAN maintains its contract with LIMITED to purchase VS goods.

It is specifically understood that this Agreement is subject to an agreement between ELLAN and LIMITED and in no way asserts the continuation of that agreement.

11.3 This agreement shall be automatically renewed when expired after third contract year, provided DONGKWANG meets minimum unit purchase requirement in Article 6 and has not violated any requirements and rules set by LIMITED of ELLAN.

Article 12. (Terms)

12.1 Nothing contained within this Agreement shall be construed to prevent DONGKWANG, its employees, representatives or designees from distributing or purchasing any other product to any other country.

12.2 Both ELLAN and DONGKWANG recognize the importance of brand integrity associated with the VS product. Consequently, DONGKWANG shall submit to ELLAN 30

days prior to each renewal year an annual detailed distribution and marketing plan for ELLAN's approval.

Such plan shall specifically describe projected and made within a particular country for a period of 3 years, then ELLAN upon written notice to DONGKWANG shall have the option of removing that country from DONGKWANG's exclusive area list.

12.3 On a quarterly basis DONGKWANG shall deliver to ELLAN a detailed sell through report(including sales by area and stock information) by product area, country, and customer.

12.4 Other than failing to meet the conditions of Article 6, theft or other substantial misfeasance, DONGKWANG shall have 30 days to cure any breach of this agreement, commencing the day it receives written communication of the alleged breach, except that nothing contained herein shall be construed as extending any time for payment which has been agreed to by the parties.

Failure to make payment pursuant to agreed terms shall constitute an immediate and substantial breach of this Agreement.

If this Agreement expires or is terminated, DONGKWANG shall be entitled to an additional period of 1 year from the date of termination, on a non-exclusive basis, to sell its inventory in the ordinary course of its business.

12.5 This Agreement shall not be construed as creating a joint venture, partnership or franchise between the parties.

It is specifically understood that neither party has any authority to bind the other or in any manner indicate that they are representatives, employees. or agents of ELLAN or LIMITED.

12.6 Any dispute regarding this Agreement shall be promptly resolved by binding Arbitration in New York based upon the rules of the American Arbitration Association.

The parties agree to accept a list of 3 potential arbitrators from that Association and shall indicate their preference with regard to each. First preference shall receive 3 points. second 2 and third 0.

The arbitrator receiving the most points shall then be appointed. The Arbitrator's authority shall not be restricted and shall include the right to assess costs and fees to include attorneys' fees. His or her award may be confirmed in any Court having jurisdiction.

Both parties agree that by signing this Agreement they are accepting jurisdiction of the State of New York in all matters.

Nothing contained herein shall prevent either party from seeking injunctive relief to prevent irreparable harm.

12.7 Both parties agree that during the course of this Agreement each will have access to confidential information and will not disclose such information to third parties without prior written consent of the other party.

The parties further recognize that a violation of this provision may result in an application for injunctive relief without the necessity of submitting this matter to Arbitration.

12.8 This Agreement may only be modified in writing initialed by both parties.

12.9 ELLAN warrants and represents that it is authorized by LIMITED to enter into this agreement and to abide by all the conditions and regulations of No Agent Letter.

12.10 ELLAN agrees to indemnity and hold harmless DONGKWANG from and against any and all claims, losses, suits, judgments and expenses including reasonable attorney fee incurred arising from or in connection with allegation of patent, trademark or tradename infringement or for death or bodily injury caused by the products.

12.11 This agreement is conditioned upon ELLAN delivering to DONGKWANG a written authorization from LIMITED to enter into this agreement. The timing of delivery of the letter will be after the initial purchase of 55,000 ~ 60,000 units by DONGKWANG.

12.13 Any Notice required under this Agreement shall be either mailed (return receipt requested) or delivered personally to the parties at the following address:

Ellan Corp. Inc.
2700 Germantown Avenue Philadelphia
PA 19133
USA

DONGKWANG
459-14 Kasan-dong
Geumchon-gu
South Korea

IN WITNESS WHEREOF, the parties hereto have authorized this Agreement to be executed by their respective duly authorized officers.

Ellan Corp. Inc.

DONGKWANG

EXHIBIT B

# MEMORANDUM OF UNDERSTANDING

This MOU is entered into by and between Ellan Corp. Inc.("ELLAN") and DONGKWANG INTERNATIONAL CO., LTD.("DONGKWANG") on August 8, 2008.

DONGKWANG desires to buy certain Merchandise (as defined below) of ELLAN and ELLAN desires to sell the merchandise to DONGKWANG pursuant to the terms and conditions of this MOU.
In consideration of the mutual understanding contained here, the parties hereto agree as follows.

1. Merchandise
   ELLAN shall sell to DONGKWANG:
   i. Victoria's Secret new products (not overstock) when and if ELLAN has purchased.
   ii. Victoria's Secret beauty line (fragrance, body care, makeup, skin care, hair care, etc.) when and if ELLAN has purchased.

2. Territory
DONGKWANG having office @ 459-14 Kasan-dong, Geumchon-gu, Seoul, Korea shall have **exclusive** right to sell the ELLAN purchased Merchandise in South Korea.

3. Terms and Conditions
   i. ELLAN shall give full support for DONGKWANG purchasing the Victoria's Secret new products and beauty line.
   ii. ELLAN will make DONGKWANG have the products in Article 1 in 6 months if DONGKWANG fulfill the Distributorship Agreement between both parties with sincerity. (the detail condition is negotiable.)
   iii. The price and quantity of the merchandise shall be negotiated by both parties.

4. Others
   i. Both parties will have Formal Contract (MOA) when DONGKWANG will be able to buy the Merchandise in Article 1 from ELLAN.
   ii. ELLAN shall give DONGKWANG all the possible VS merchandise and the information about the new merchandise selling in USA.
   iii. ELLAN will give good words to Limited when Limited branches out officially to Korea, that DONGKWANG will have first right to negotiate with Limited.
   iv. ELLAN will give full supports to DONGKWANG in order for Victoria Secret to success in Korea by giving supports and guidelines in Sales and Marketing.
   v. ELLAN will do ELLAN's best to help DONGKWANG open the single shop that can have external sign of Victoria's Secret in a 6 months if DONGKWANG fulfill the Distributorship Agreement between both parties with sincerity. (the detail condition is negotiable.)

ELLAN CORP. INC.
2700 Germantown Avenue Philadelphia
PA 19133, USA
Tel : 1-267-467-0277
Fax : 1-215-745-1688

DONGKWANG INTERNATIONAL CO., LTD.
459-14 Kasan-dong, Geumchon-gu
Seoul, Korea
Tel : 82-2-3479-2886
Fax : 82-2-854-9841

EXHIBIT C

# MEMORANDUM OF AGREEMENT

This MOA is entered into by and between ELLAN CORP. INC.("ELLAN") and DONGKWANG INTERNATIONAL CO., LTD.("DONGKWANG") on August 8, 2008.

Both parties have been agreed to the Distributorship Agreement for Victoria's Secret merchandise. In consideration of the mutual understanding contained here, the parties hereto agree as follows.

1. This agreement is for the Distributorship Agreement for Victoria's Secret merchandise between both parties.

2. ELLAN and DONGKWANG agrees to change the terms of payment from the Letter of Credit (L/C) to cash for initial purchase.

3. ELLAN guarantees to agree to clear L/C (M04-02-807-NU-00744) when and if DONGKAWANG pays 30% of the initial purchase by cash.

4. When DONGKWANG selects the merchandise for the initial purchase (min.55,000 units) at the warehouse in Ningbo, China, before shipment, DONGKWANG will pay the remainder (70%) of the initial purchase by cash. After all the payments are settled, VS merchandise will be shipped to DONGKWANG.

ELLAN CORP. INC.
2700 Germantown Avenue Philadelphia
PA 19133, USA
Tel : 1-267-467-0277
Fax : 1-215-745-1688

DONGKWANG INTERNATIONAL CO., LTD.
459-14 Kasan-dong, Geumchon-gu
Seoul, Korea
Tel : 82-2-3479-2886
Fax : 82-2-854-9841

EXHIBIT D



Limited brands

No-Agent Letter

To Whom It May Concern:

Reference is made to that certain Sell-Off Agreement dated January __1__, 2007 (the "Agreement") between Victoria's Secret Stores, LLC ("Seller") and American Fashion Brands, LLC ("Buyer"). The undersigned "Purchaser" wishes to purchase goods and merchandise sold by Seller to Buyer and which merchandise may bear the names, trademarks, trade names or other intellectual property rights belonging to Seller and its Affiliates (the "Merchandise"), for the purpose of reselling such Merchandise. By its signature below, Purchaser acknowledges and agrees that (a) it is not permitted to purchase such Merchandise unless permitted to do so by Seller and only after Seller's receipt and approval of this No-Agent Letter and (b) any permitted purchases will be upon the following terms and conditions. This letter is made expressly for the benefit of Seller and no other persons shall be a beneficiary hereof.

- Purchaser represents that it has read and understands the Agreement and agrees to be bound by the restrictions on the sale and use of Merchandise to the same extent as the Buyer under the Agreement (including any Schedules or Exhibits thereto), and Purchaser agrees that Purchaser shall have no rights under the Agreement against Seller or otherwise. Purchaser agrees to indemnify and hold Buyer harmless from any and all lost, cost, damage, expense or amount for which Buyer is liable to Seller as a result of Purchaser's failure to comply with the terms of this No-Agent Letter.

- Purchaser agrees that it shall only sell Merchandise directly through its own bricks and mortar retail stores in the geographic locations, at the times and in the quantities set forth on the Purchase Order approved in accordance with Purchase Schedule 1 and Schedule 2 of the Agreement. For purposes of clarity, each Purchaser of the Merchandise may not sell the Merchandise except to its own retail customers through brick and mortar retail stores and may not sell the Merchandise in any other manner including, but not limited to, jobbers, wholesalers, over the internet, through catalogues and/or mail order.

- Purchaser agrees that Seller is not in any form granting Purchaser or Purchaser's customers a license of any intellectual property of Seller or otherwise authorizing or appointing Purchaser as an agent of Seller or any affiliate of Seller.

- Unless Seller consents in writing, Purchaser agrees that Purchaser is not authorized to advertise (by signage or otherwise) the Merchandise or to use any catalogue, catalogue pictures, copy, internet or other media, or intellectual property of Seller or any of its Affiliates for any purpose, including as part of any signage, letterhead, business correspondence, labeling or any other form of advertising, including advertising on the internet.

- Purchaser agrees that it shall not deal in goods bearing, in any fashion, any name, trademark, trade name or other intellectual property right belonging to Seller or any of its Affiliates except for Merchandise obtained by Purchaser from Buyer pursuant to and consistent with the terms of the Agreement.

- Purchaser acknowledges that some Merchandise may be shipped to Buyer in polybags and cartons. Purchaser agrees to ensure the removal or cause the removal of all Merchandise from such polybags and cartons before displaying or presenting any Merchandise to any customers.

- Purchaser acknowledges and agrees that Seller may with or without cause immediately terminate the right of Buyer to sell Merchandise to Purchaser and shall be entitled to pursue all available legal means against Purchaser, including those provided for under the Agreement as if Purchaser were the Buyer, in the case of any breach of this No-Agent Letter.

[signature page follows]

Jul 03 2007 2:49PM HP LASERJET FAX

JUL-03-2007 15:13 PRO-LOSS PREVENTION 7083038024 Case 1:09-cv-00414-LAP-MHD Document 39 Filed 04/28/10 Page 34 of 38 P.3

02 2007 5:48PM HP LASERJET FAX

⑪

No Agent Letter Signature Page

Acknowledged and Agreed:

For Limited Brands:

By: _____

Name: JOHN THRONO

Title: VP

Address: 2 Limited Parkway
Columbus OH 43230

Phone: 614 - 415 - 8722

Facsimile No.: 614 415 - 7212

Date: 7/3/07

For Purchaser:

DS Marvel Worldwide, ltd.
(The Exact Name of Company)

By: _____

Name: Boris Savitsky

Title: President

Address: 2500 Hamilton blvd.
S. Plainfield, NJ 07080

Phone: 908-737-9800

Facsimile No.: 908-757-3262

Date: July 2, 2007

For American Fashion Brands

By: _____

Name: HISINDEL SABE

Title: PARTNER

Address: 130 W 42 ST.
New York, NY 10036

Phone: 212 - 764 - 5580

Facsimile No.: 212 - 764 - 6987

Date: 7/1/07

For Approved Wholesaler/Broker

ELLAN CORP. INC.
(The Exact Name of Company)

By: _____

Name: SAE DO KIM

Title: President

Address: 2700 Germantown Ave.
Phila, PA, 19133

Phone: 215 861 - 4687

Facsimile No.: 215) 745 - 1688

Date: 7/2/07

EXHIBIT E

# VICTORIA'S SECRET INVENTORY PURCHASE AGREEMENT

THIS INVENTORY PURCHASE AGREEMENT (hereafter "Agreement") dated
April 25th, 2008, is entered into by and between American Fashion Brands LLC
(hereafter "Seller") and Ellan Corp. Inc., 2700 Germantown Ave., Philadelphia, PA 19133
(hereafter "Buyer").

## BACKGROUND

Buyer desires to purchase from Seller certain Victoria's Secret branded
merchandise of Limited Brands, Inc and Victoria's Secret Stores LLC and their affiliates,
(hereafter "VS" Merchandise) pursuant to the terms and conditions of this Agreement. This
Agreement incorporates by reference any and all purchase orders entered into by and
between Seller and Buyer relating to VS Merchandise and governs the sale of VS
Merchandise to Buyer pursuant to the terms and conditions of this Agreement.
Accordingly, in consideration of the premises and the mutual agreements contained
herein, and for other good and valuable consideration, the receipt and sufficiency of
which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1.  Definitions
    In addition to the other terms defined elsewhere in this Agreement as
used herein, the term "VS Merchandise", means the labeled merchandise identified on the
Purchase Order or Seller-Issued Invoice attached hereto and incorporated herein, the term
"Affiliates", means as to any person or entity (the subject person or entity) and any other
person whom, directly or indirectly, is in control of, is controlled by, or is under common
control with the subject person. For purposes of the definition of Affiliates, "Control" of a
person or entity means the power direct of indirect, (i) to vote 10% or more of the securities or
other ownership interest and/or having power for the election of directors (or managers
in the case of a limited liability company) of the person or entity, or (ii) otherwise to,
whether by contract or otherwise; the term "Person" means an individual, a partnership, a
corporation, a limited liability company , a business trust, a joint stock company, a  trust,
an unincorporated association, a joint venture, a governmental authority or any other
entity of whatever nature or type.

2.  Purchase and Sale Term

Buyer and Seller agree that the sale and purchase of all VS Merchandise
shall be subject to the terms of this Agreement, including such terms set forth
in the purchase order or invoice attached hereto and incorporated herein and any and all
subsequent purchase orders or invoices between Buyer and Seller which relate to VS
Merchandise. The purchase price(s) for applicable VS Merchandise shall be reflected on
the applicable Purchase Order and/or Invoice and the purchase price(s) shall be payable by
Buyer to Seller in U.S. Dollars and in immediately available funds.

Delivery

All merchandise shall be delivered to Buyer with FOB location of Ningbo, China warehouse facility and shall be shipped from this location via Buyer's designated freight forwarder once Buyer's payment has been received in full against Seller's applicable invoice.

No Warranty, Limitation of Liability

SELLER HEREBY DISCLAIMS ANY AND ALL EXPRESS OR IMPLIED WARRANTEES RELATING TO THE VS MERCHANDISE SOLD HEREUNDER INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTEES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE; IT BEING THE INTENT OF SELLER AND BUYER THAT THE MERCHANDISE IS SOLD "AS IS" AND REGARDLESS OF ANY TYPES OF WARRANTEES THAT SELLER MAY NORMALLY EXTEND TO ITS CONSUMER, CUSTOMERS OR OTHER PURCHASE BUYERS.

### 3.1   Limitation of Re-Sale of Merchandise

Buyer agrees that it shall not sell the VS Merchandise in any manner except to their retail customers through bricks and mortar retail stores and may not sell the VS Merchandise in any other manner, including, but not limited to, jobbers, unapproved wholesalers, over the internet, through catalogs and/or mail order.

### 3.2   No Agency

Buyer agrees and acknowledges that Seller is not in any form granting to Buyer or its affiliates, customers, or purchasers, a license authorizing or appointing Buyer as an agent of Seller, or of Victoria Secret Stores, LLC,  Limited Brands, Inc., or their affiliates, and Buyer expressly agrees not to represent itself and to ensure that its representatives, agents, employees, and affiliates do not represent themselves as licensed or authorized agent or agents of any of the VS Merchandise.

### 3.3   Intellectual Property

Other than the right to sell VS Merchandise to retail customers authorized by this Agreement with the labels bearing Victoria's Secret trademark intact, Buyer agrees that it shall not, and shall insure that its employees, agents and authorized representatives, affiliates and customers do not, advertise (by signage or otherwise), utilize or deal in goods bearing, in any fashion, any name, trademark, trade name, logo, or other intellectual property right of Victoria Secret Stores LLC, Limited Brands, Inc. and their affiliates, and agrees that neither it nor any such person is authorized to use any catalog, catalog pictures, copy, Internet or other media or intellectual property of Limited Brands, Inc. or Victoria's Secret LLC, or any of their affiliates as part of its signage, letterhead, business correspondence, labeling, or any other form of advertising, including advertising on the Internet. Upon request of Seller, Buyer shall submit to Seller for Seller's approval Buyer's written plan on marketing and advertising to promote and sell the VS Merchandise provided.

4.1   Indemnity and Damages

Buyer shall indemnify and hold Seller and its affiliates harmless from and against any and all laws, costs, damages, expenses, claims and/or liabilities, including reasonable attorney's fees which Seller incurs as a result of, relating to, or arising out of Buyer's breach of any term, condition or covenant in this Agreement.

4.2   Specific Performance

Buyer and Seller agree that any breach by Buyer of Sections 3.1, 3.2, or 3.3, of this Agreement would irreparably injure Seller and that money damages would be an adequate remedy, therefore. Accordingly, Buyer agrees that the Seller shall be entitled to one or more injunctions enjoining any such breach or requiring specific performance of this Agreement and consents to the entry thereof. this being in addition to any other remedy to which Seller would otherwise may be entitled via law or in equity.

4.3   Buyer's Assigned Geographic Victoria's Secret Selling/Distribution Areas

Seller hereby agrees that Buyer, ELLAN CORP. INC., SHALL HAVE THE FOLLOWING GEOGRAPHIC / COUNTRY DISTRIBUTION OF VICTORIA'S SECRET APPAREL AND ACCESSORIES PURCHASED FROM AMERICAN FASHION BRANDS LLC:

--SOUTH KOREA

ELLAN CORP. INC., SHALL HAVE SUCH EXCLUSIVE GEOGRAPHIC DISTRIBUTION RIGHTS FOR THE ENTIRE TIME PERIOD WITHIN WHICH VICTORIA'S SECRET MERCHANDISE IS PURCHASED FROM AMERICAN FASHION BRANDS ON A CONSISTENT BASIS („consistent basis" shall be defined by both Parties to this agreement).

IN WITNESS THEREOF, Buyer and Seller have executed this Agreement to be officially effective UPON RECEIPT OF FIRST AFB MERCHANDISE INVOICE (for first order total of USD 2,063,258.38) BALANCE of USD _____ AFTER previously-agreed deposit amount of USD _____ has first been facilitated prior to Casual Smart Ltd.'s order extraction from AFB warehouse facility.

EXECUTION DATE: April 25, 2008

Seller: AMERICAN FASHION BRANDS LLC     Buyer: ELLAN CORP. INC.

By: _____     By:_____

Printed Name: _____     Printed Name:  Sae Da Kim (Rich Kim)

Title: _____     Title:  President _____